STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re: Morgan Meadows/Black Dog Realty } | |
|     Subdivision Act 250 Permit } | Docket No. 267-12-07 Vtec |
|     (Appeal of Tidwell, <u>et al.</u>) } | |

<u>Decision and Order on Motions regarding Party Status</u>

Appellants Michael M. and Terri A. Tidwell appealed from a decision of the District 2 Environmental Commission issuing an Act 250 Land Use Permit to Appellee-Applicant Black Dog Realty, LLC for a 41-lot subdivision with a maximum of 90 housing units on Hunt Hill Road in the Town of Windsor. The Tidwell appeal raises issues under Act 250 Criteria 5,[1] 6, 7, 8, 9(A), 9(B), and 9(K).

Additional Appellant Vermont Agency of Agriculture, Food, and Markets (Agency of Agriculture), represented by Assistant Attorney General Michael O. Duane, filed an appeal within the time allowed under V.R.E.C.P. 5(b)(2). The Agency of Agriculture appeal raised one issue under Act 250 Criterion 9(B) only. The Agency withdrew its appeal on April 16, 2008; the caption of this appeal reflects that withdrawal.

Additional Appellant Craig Pease filed an appeal within the time allowed under V.R.E.C.P. 5(b)(2). The Pease appeal raises issues under Act 250 Criteria 1, 2, 3, 5,[2] 7, 8, 9(A), 9(B), 9(J) and 9(K). In addition, because Appellant Pease had been denied party status

---

[1] The Tidwells moved to amend the Statement of Questions on January 14, 2008, to add this criterion; no opposition has been filed and the motion to amend is hereby GRANTED.

[2] Mr. Pease moved to amend the Statement of Questions on January 16, 2008, to add this criterion; no opposition has been filed and the motion to amend is hereby GRANTED.

1

by the District Commission under Act 250 Criterion 9(B), he appealed the denial of party status and sought party status in this Court under Criterion 9(B).

Appellants Tidwell have appeared and represent themselves. Appellant Craig Pease is represented by Stephanie J. Kaplan, Esq. and Gerald R. Tarrant, Esq. Appellee-Applicant Black Dog Realty, LLC and Appellee Mark G. Phillips[3] are represented by Jonathan L. Springer, Jr., Esq.; in addition, after the pending motions had been filed, Lawrence G. Slason, Esq., also entered his appearance on behalf of Appellee-Applicants. The Land Use Panel of the Natural Resources Board is represented by John H. Hasen, Esq. Intervenor Conservation Law Foundation (CLF) is represented by Sandra E. Levine, Esq. Intervenor Vermont Natural Resources Council (VNRC) is represented by Jon Groveman, Esq. The Town of Windsor, represented by J. Christopher Callahan, Esq., and the Southern Windsor County Regional Planning Commission, appearing through its Executive Director, Thomas Kennedy, have not filed memoranda on the pending motions.

Procedural History

On August 10, 2006, Appellee-Applicant Black Dog applied for an Act 250 land use permit for a subdivision project on a 55.5-acre property described as the former "Time'L Tell Farm" on Hunt Hill Road in the Town of Windsor. At the time of the November 8, 2007 decision of the District 2 Environmental Commission, the project consisted of a 41-lot subdivision with a maximum of 90 single- and multi-family housing units.

Appellants Tidwell participated in the matter before the District Commission and were granted party status. Appellant Pease participated in the matter before the District

---

[3] Mr. Springer entered his appearance in this matter on behalf of "Mark G. Phillips, Developer/Applicant" on January 14, 2008 and on behalf of "Black Dog Realty, LLC, Applicant" on January 15, 2008. However, the motion memoranda have been filed only on behalf of Black Dog Realty, LLC.

2

Commission and was granted party status except for Criterion 9(B). Neither CLF or VNRC participated before the District Commission.

In the above-captioned appeal, Mr. Pease moved for party status under Criterion 9(B). VNRC and CLF each filed motions to intervene. The appeals had been filed on December 7, 2007. As of January 14, 2008, the Court had received no entry of appearance for the applicant, although Attorney Springer had entered his appearance on behalf of Mr. Phillips in a related municipal appeal (Docket No. 156-7-07 Vtec).

On the audio tape record of the initial telephone conference held on January 14, 2008 Attorney Duane, representing the then-Appellant Agency of Agriculture, stated that the Agency would not be opposing the motions to intervene. Attorney Springer also stated, on behalf of Appellee-Applicant(s), that he did not expect to file an opposition to the intervention requests of VNRC and CLF in the Act 250 case, but that he did wish to oppose Mr. Pease's request for party status under Criterion 9(B). On behalf of Mr. Pease, Attorney Kaplan commented that the request had been filed on December 11, 2007, and argued that it was already too late for an opposition to be filed. As no party opposed the intervention requests of VNRC and CLF, Judge Wright stated on the audio tape record that the motion ruling would not have to wait out the time for responses.

By entry order on January 16, 2008, the Court granted the motions to intervene filed by VNRC and CLF, based on the lack of opposition, and granted the Pease request for party status, as no timely opposition had been filed. However, later on January 16, the Court received a request by letter from Attorney Springer asking the opportunity to file an opposition to the VNRC and CLF motions to intervene. As the motions had already been granted, Appellant-Applicants were instead given additional time to file any party status motions, including motions to vacate the entry orders granting party status as intervenors. Appellee-Applicant Black Dog Realty, LLC moved to vacate the entry order granting the party status requests of CLF and VNRC, and opposes their intervention, but does not now

3

oppose Mr. Pease's party status under Criterion 9(B).

The Land Use Panel of the Vermont Natural Resources Board entered its appearance as a party by right, and also moved to vacate the entry order granting the party status requests of CLF and VNRC, opposing their intervention, as well as moving to vacate the entry order granting Mr. Pease's party status under Criterion 9(B).

All three challenged parties claim standing in this appeal to address the potential impacts of Appellee-Applicants' proposed project under Act 250 Criterion 9(B). 10 V.S.A. § 6086(a)(9)(B). Criterion 9(B) provides that an applicant for the "development or subdivision of primary agricultural soils" must demonstrate either that the project "will not result in any reduction in the agricultural potential of the primary agricultural soils" or that the project nevertheless meets all four of the following subsections of the criterion.

Subsection (i) requires that the project "will not significantly interfere with or jeopardize the continuation of agriculture or forestry on adjoining lands or reduce their agricultural or forestry potential." § 6086(a)(9)(B)(i). The remaining three subsections require a showing that the applicant does not own or control any lands (other than primary agricultural soils) that are reasonably suited to the purpose of the project; that the project has been planned to minimize "the reduction of agricultural potential of the primary agricultural soils through innovative land use design resulting in compact development patterns, so that the remaining primary agricultural soils on the project tract are capable of supporting or contributing to an economic or commercial agricultural operation;" and that "suitable mitigation will be provided for any reduction in the agricultural potential of the primary agricultural soils" caused by the project. § 6086(a)(9)(B)(ii)- (iv). The choice of mitigation measures depends to some extent on whether the project is located in a growth center. 10 V.S.A. § 6093. Subsections (ii) and (iii) of Criterion 9(B) also contain an exception for projects proposed for a designated growth center, not alleged to be applicable

4

in the present case.

By its terms, Criterion 9(B) addresses preservation of the agricultural <u>potential</u> of primary agricultural soils. It does not require that such soils actually be in use for agriculture. Rather, it preserves their potential, minimizes their reduction, and preserves the remaining primary agricultural soils' "capab[ility] of supporting or contributing to an economic or commercial agricultural operation."

Criterion 9(B) and the definition of primary agricultural soils were most recently amended by the growth center legislation adopted in 2006. 2005, No. 183 (Adj. Sess.). Although that legislation also created a new chapter of the municipal statutes governing growth centers, expressing policies of avoiding the "fragmentation" of farm land, 24 V.S.A. § 2791(13)(I)(iii), and of attaining "compact concentrated areas of land development . . . separated by rural countryside or working landscape," 24 V.S.A. § 2791(12)(B)(vi), it did not incorporate similar language regarding land use into Criterion 9(B).

<u>Appellant Pease – Party Status under Criterion 9(B)</u>

Appellant Pease has party status under Criterion 9(B) if he alleges an injury to a "particularized interest" protected by Criterion 9(B), "attributable to" the decision on appeal, that "can be redressed" in this proceeding. 10 V.S.A. § 8502(7) (defining "person aggrieved"[4]).

These requirements for standing to appeal are similar to those for civil actions in Vermont generally. See <u>Parker v. Town of Milton</u>, 169 Vt. 74, 77–78 (1998). They have been

---

[4] This section is part of the Consolidated Environmental Appeals statute that also added a requirement of prior participation in the district commission proceedings, 10 V.S.A. § 8504(d), as well as adding the potential for an aggrieved person to take a further appeal to the Supreme Court, which had not been available except for the applicant under prior law. 10 V.S.A. § 6085(c)(1) (1997).

applied by the Environmental Board, e.g., In re Stone Cutter's Way/ Winooski East Waterfront Redevelopment Project, Declaratory Ruling Request # 391 (Vt. Envtl. Bd. June 1, 2001), and by this Court in Act 250 cases, e.g., In re Marcelino Waste Facility, Docket No. 44-2-07 Vtec (Vt. Envtl. Ct Jan. 28, 2008 and March 21, 2008); In re: Eastview at Middlebury, Inc., Docket No. 256-11-06, slip op. at 2–3 (Vt. Envtl. Ct. Feb. 15, 2008), appeal docketed, No. 2006-166 (Vt. Sup. Ct. Apr. 25, 2008), as well as in appeals from decisions of the Vermont Agency of Natural Resources. In re: Entergy Nuclear/Vt. Yankee Thermal Discharge Permit Amendment, Docket No. 89-4-06 Vtec, slip op. at 6–9 (Vt. Envtl. Ct. Jan. 9, 2007); In re: Unified Buddhist Church, Inc., Indirect Discharge Permit, Docket No. 253-10-06 Vtec, slip op. at 2–4 (Vt. Envtl. Ct. Aug. 15, 2007).

Mr. Pease has standing under other criteria of Act 250, including Criterion 8 as it relates to aesthetics, Criterion 9(H) (costs of scattered development) and Criterion 9(L) (rural growth areas). He lives on a 4.65-acre parcel of property adjacent to the Tidwells and adjacent to the project property. The project property has been in use as a working farm, with cows grazing on the land visible from the Pease residence. Mr. Pease values the settlement pattern of a working farm close to a densely populated village, and the sense of place he and his family receive from the pastoral scene they can observe from their residence. The fact that these concerns are "particularized" to Mr. Pease, as opposed to being generalized policy concerns, is not contested. However, while these concerns regarding the character of the area and the area's settlement patterns may relate to the subdivision standards in the municipal appeal, or may relate to Criteria 8 (Aesthetics), 9(H) or 9(L) in this appeal, they do not relate to Criterion 9(B), which deals with the preservation of the agricultural potential of the primary agricultural soils on the project property, rather than the aesthetics or character of the property's actual use for agriculture. That is, these

6

particularized interests are not ones "protected by" the terms of Criterion 9(B).[5]

Nevertheless, Mr. Pease has also shown other particularized interests that are protected by Criterion 9(B). He occupies adjoining lands to the project, and he and his family grow heirloom vegetables, herbs, berries, and orchard fruit, and raise heirloom varieties of chickens, on that adjoining property.

If a project applicant cannot demonstrate that the proposed project will not reduce the agricultural potential of the project's primary agricultural soils, subsection (i) of Criterion 9(B) requires the applicant to show that the proposed project "will not significantly interfere with or jeopardize the continuation of agriculture or forestry on adjoining lands or reduce their agricultural or forestry potential." 10 V.S.A. § 6086(a)(9)(B)(i). This requirement is not keyed to the soils on adjacent property; rather, it looks at the continuation of or potential for agriculture and forestry on adjoining lands. Moreover, unlike the reference in subsection (iii) of Criterion 9(B) to whether the remaining primary agricultural soils on the project tract are capable of supporting or contributing to "an economic or commercial" agricultural operation, subsection (i) contains no requirement that the agriculture or forestry on adjoining lands meet any minimum size or commercial

---

[5] This Court is directed to give prior Environmental Board decisions the same "weight and consideration" as the Court's own prior decisions. 10 V.S.A. § 8504(m). Although there are not many Environmental Board decisions analyzing standing of neighbors under Criterion 9(B), it appears to have been common practice, at least under prior law (before changes to 10 V.S.A. § 6085(c)(1) allowed neighboring parties to appeal to the Supreme Court) to allow neighbors standing under Criterion 9(B) to assert this kind of agricultural-character-of-the-area interest, as opposed to considering it under Criterion 8 (Aesthetics). See, e.g. Van Sicklen Limited Partnership, #4C1013R-EB, Memorandum of Decision at 6 (Vt. Envtl. Bd. June 8, 2001); Spear Street Associates, #4C0489-1-EB, Memorandum of Decision at 3 (Vt. Envtl. Bd. Apr. 4, 1984). Cf., District Commission's ruling on 9(B) standing of neighbor in the Eastview case, sub nom. Re: President and Fellows of Middlebury College, Application 9A0314, Findings of Fact and Conclusions of Law and Order at 4–5 (Dist. 9 Envtl. Comm Oct. 6, 2006).

requirements.

Mr. Pease therefore has standing under Criterion 9(B). The motion to vacate the Court's order granting Mr. Pease party status on Criterion 9(B) is DENIED; Mr. Pease may continue to participate in this appeal on Criterion 9(B) as well as on the other issues in his Statement of Questions.

VNRC and CLF Party Status

Neither CLF nor VNRC participated at the District Commission; neither organization seeks party status as an appellant. Rather, each organization seeks to intervene, either as a "person aggrieved" under 10 V.S.A. § 8504(n)(4) or as otherwise meeting the standards for intervention under V.R.C.P. 24, made applicable to these proceedings by § 8504(n)(6).

For an organization to have standing, it must demonstrate that "(1) its members have standing individually; (2) the interests it asserts are germane to the organization's purpose; and (3) the claim and relief requested do not require the participation of individual members in the action." Parker v. Town of Milton, 169 Vt. 74, 78 (1998), discussed in In re: Entergy Nuclear/Vt. Yankee Thermal Discharge Permit Amendment, Docket No. 89-4-06 Vtec, slip op. at 6–9 (Vt. Envtl. Ct. Jan. 9, 2007); In re: Unified Buddhist Church, Inc., Indirect Discharge Permit, Docket No. 253-10-06 Vtec, slip op. at 2–4 (Vt. Envtl. Ct. Aug. 15, 2007).

Unlike, for example, a nuisance or trespass suit seeking damages, it is in the nature of a development application that the relief requested – approval or denial of the application – does not require the participation of any individual members of the organizations in the action, even though some of those members may be called as fact witnesses if they have relevant testimony to provide in the de novo proceeding. The third element of the organizational standing test is therefore satisfied for both organizations.

8

The second element of the organizational standing test is also satisfied, as the interests that each organization asserts are germane to the organization's purpose, as expressed in the organizations bylaws and/or mission statements.[6] Both organizations are concerned with the preservation of natural resources, including those that are or may be devoted to agricultural uses, and both have advocated the protection of farmland and the prevention of sprawl, including the statutory changes to Act 250 relating to municipal growth center legislation. 2005, No. 183 (Adj. Sess.). Both CLF and VNRC satisfy the second element of the test for organizational standing.

As any asserted injuries attributable to the decision on appeal can be redressed by this Court in this de novo proceeding, 10 V.S.A. § 8504(a), V.R.E.C.P. 5(g), Entergy Nuclear at 8, all that remains is to analyze whether the members of CLF and VNRC have a "particularized interest protected by" Criterion 9(B) of Act 250. 10 V.S.A. § 8502(7). Unlike in Entergy Nuclear and Unified Buddhist, in which the organization's members use and enjoy the resource protected by the statute or regulations at issue in those appeals (the Connecticut River and Lull's Brook, respectively), in the present case the affidavits of the individual members of CLF and VNRC do not reflect a particularized interest in the primary agricultural soils on this particular applicant's property.

The individual members of VNRC and CLF who provided affidavits relating their interests express their interests in maintaining the capacity for locally-grown food in Windsor County and in Vermont generally, in enjoying the higher quality of locally-grown food, in avoiding the added pollution and environmental effects of shipping agricultural products from a distance, in reducing sprawl and maintaining Vermont's working landscape, in enjoying the view of the rural working landscape, and in the proper

---

[6] VNRC provided excepts from its mission statement in its memorandum; CLF did not, but no party contests that it meets this requirement.

application of the law to protect Vermont's primary agricultural soils.

Both organizations have been active in advocating for policies to preserve farmland, to prevent sprawl, and to make land affordable and available for those who want to farm. Both organizations worked actively on the growth center legislation, 2005, No. 183 (Adj. Sess.) enacted in 2006, and on other measures to strengthen Criterion 9(B). Both organizations are understandably extremely concerned as a matter of policy in how those legislative provisions are applied to particular cases. CLF has also represented[7] farmers and conservation agencies in land use permit proceedings involving farmland, including in Act 250 proceedings on Criterion 9(B).

These policy and advocacy interests of the organizations and their members, however, do not constitute the type of "particularized interest" required for standing. They are not suffering the "threat of actual injury to a protected legal interest," Parker at 77 (quoting Town of Cavendish v. Vermont Pub. Power Supply Auth., 141 Vt. 144, 147 (1982)); rather, they are asserting a generalized policy concern or a generalized harm to the public or the public interest. Parker at 78 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The question of whether the interest raised by potential intervenors is general or "particularized" depends on whether the interest is definite and related to the development proposal or whether it is "of an abstract and indefinite nature," such as the shared concerns about obedience to law discussed in Federal Election Comm'n v. Akins, 524 U.S. 11, 23–24 (1998), and cases cited therein. This analysis of the "particularized interest" required for standing ensures that the Court restricts itself "to the adjudication

---

[7] The analysis in the present case addresses only whether CLF has standing to appear as a party itself, not whether it could represent any other person with standing, as in In re: Southwestern Vermont Health Care Corp., #8B0537-EB (Vt. Envtl. Bd. Feb. 22, 2001) cited in its memorandum, in which it represented the Bennington County Conservation District.

10

of actual disputes" rather than "presiding over broad-based policy questions that are properly resolved in the legislative arena." Parker, 169 Vt. at 77; and see, e.g., Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 11-12 (2004) and cases cited therein.

The interests that the individual members of both CLF and VNRC have asserted are important but generalized policy interests, rather than "particularized interests" protected by Criterion 9(B). Unlike Appellants, the members are not neighbors of the particular project before the Court. As the Environmental Board explained in granting party status under Criterion 9(B) to a neighborhood organization in Van Sicklen, the members of which lived in the immediate area and had a particularized interest in the protection of the agricultural soils in their neighborhood and the potential for "the demise of agriculture in this area . . . over time," "[w]ere the facts to be different – were a group's purpose to prevent vanishing farmland but none of its members owned land near or adjoining a proposed project" the analysis might instead look to the "status and circumstances" of the group's members rather than to the group's purpose. Van Sicklen at 6–7. Therefore, neither VNRC nor CLF qualifies for intervention under § 8504(n)(4).

Nor do VNRC or CLF meet the standard for intervention in V.R.C.P. 24, as made applicable by 10 V.S.A. § 8504(n)(6). With respect to V.R.C.P. 24(a), the statute does not confer an unconditional right to intervene other than on parties who appeared in the action appealed from (and who retained party status), parties by right, and the natural resources board. § 8504(n)(1), (2), (3); § 8502(5). Nor does either organization claim an interest, as discussed above, relating to the property or transaction which is the subject of the action. In any event, to the extent that their interests are not already adequately represented by Appellants, as a practical matter they will be able to protect those interests, to the extent relevant in this particular application, if they apply for and are granted amicus status, discussed below.

11

Under V.R.C.P. 24(b)(1), the statute confers a conditional right to intervene, other than in municipal appeals, § 8504(n)(5), only on those who qualify as a "person aggrieved," discussed fully above, or who otherwise[8] qualify under V.R.C.P. 24 for intervention. § 8504(n)(4), (6). Nor do the organizations assert a separate "claim or defense" that has a question of law or fact in common with the appeal itself. V.R.C.P. 24(b)(2). Therefore, neither VNRC nor CLF qualifies for intervention under § 8504(n)(6).

However, because the matter will be heard de novo in Environmental Court, the Court will be considering the application on its merits, under all the challenged criteria, including 9(B), on the basis of the evidence submitted to it. Because both organizations may have much to contribute on the interpretation and application of Criterion 9(B), especially in light of the 2006 amendments, the Court will consider giving each organization leave to participate in the de novo proceedings as amicus curiae, much as is allowed under 10 V.S.A. § 6085(c)(5), and as is allowed in Environmental Court under V.R.A.P. 29, made applicable by V.R.E.C.P. 5(a)(2). "In appropriate circumstances, V.R.A.P. 29 may provide the proper avenue for an interested person, who is not a statutory party, to participate in the appellate process." In re Stokes Communications Corp., 164 Vt. 30, 35 (1995) (State of Vermont as amicus in Act 250 appeal). See, e.g., In re Stormwater NPDES Petition, 2006 VT 91, 180 Vt. 261 (CLF and VNRC as amici); In re Wal-Mart Stores, Inc., 167 Vt. 75 (1997) (VNRC as amicus in Act 250 appeal).

---

[8] This must have been intended to refer to intervention under V.R.C.P. 24 (a)(1), (a)(2), or (b)(2); to interpret it otherwise would lead to the infinite loop or entirely circular absurd result that the organizations should qualify for intervention because the statute confers a conditional right to intervene if they qualify for intervention. Statutory constructions leading to absurd or irrational results are to be avoided. Bergeron v. Boyle, 2003 VT 89, ¶ 11, 176 Vt. 78, 83 n. 1 (citations omitted).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' respective motions to amend their Statements of Questions are GRANTED, (see footnotes 1 and 2, above). Appellee-Applicant Black Dog Realty, LLC's motion and the Land Use Panel of the Natural Resources Board's motion to vacate the order allowing the intervention of the Vermont Natural Resources Council and the Conservation Law Foundation under Criterion 9(B) are GRANTED, and their petitions for intervention are DENIED. The Land Use Panel's motion to vacate Mr. Pease's party status with respect to Criterion 9(B) is DENIED.

The Conservation Law Foundation and the Vermont Natural Resources Council may request to participate as <u>amici</u> <u>curiae</u> pursuant to V.R.A.P. 29 and 10 V.S.A. § 6085(c), as discussed above. Until any such requests are filed the Court will continue to send them notice as informational parties only, and requests that the other parties also continue to send them informational copies of all filings; they may participate in the already-scheduled conference on May 5, 2008.

Attorneys Springer and/or Slason are requested to be prepared to inform the Court orally at the May 5, 2008 telephone conference, and in writing on or before May 12, 2008, as to whether Mr. Phillips remains as a separate party to this appeal, or whether Black Dog Realty, LLC, is the sole party applicant and Mr. Phillips is simply its representative.

Done at Berlin, Vermont, this 1st day of May, 2008.

_____
Merideth Wright
Environmental Judge