**Darlene BEAUPRE, Anne Blair, and Luanne Gallagher v. GREEN MOUNTAIN POWER CORP., Burlington Electric Dept., and Central Vermont Public Service Corp.**

[776 A.2d 424]

No. 99-415

May 15, 2001. Tenants Darlene Beaupre, Anne Blair and Luanne Gallagher appeal an order of the Public Service Board closing the docket in their contested case against utilities Green Mountain Power Corp., Burlington Electric Dept., and Central Vermont Public Service Corp. Tenants claim that (1) the board was incorrect in concluding that its authority does not extend to the exercise of personal jurisdiction over landlords and that it lacks authority to order utilities onto nonutility property to conduct inspections of wiring to resolve monetary disputes between landlords and tenants, (2) the board abused its discretion when it denied tenants' motion for certification of this action as a class action, and (3) the board erred in concluding that it cannot acquire in personam jurisdiction over classes of persons, such as landlords, merely by service of summons. Because the underlying billing dispute between tenants and utilities has been resolved by stipulation and a release from liability, leaving no live controversy between the parties, we affirm.

On August 7, 1996, tenants filed their complaint with the board. Previously, tenants had been residential electric customers living in rented apartments in Colchester, Burlington, and Rutland. Each complained of high utility bills arising from electricity being diverted to

others in their apartment building after the electricity had passed through tenants' own meters. To stop the ongoing diversion and to confirm its magnitude, customers brought this action before the board, naming their respective landlords and utility providers as defendants, seeking injunctive relief and requesting rulemaking. The injunctive relief sought to require utilities to (1) investigate the internal wiring of tenants' rental residences, (2) estimate the amount of electricity for which they paid that should have been the responsibility of the landlords or other tenants, and (3) bill such charges to the parties who appear to have actually received the service and adjust tenants' accounts accordingly. Tenants also sought injunctive relief against their respective present and former landlords, requiring them to provide utilities access as needed for the purpose of determining how much electricity is or was being billed to tenants but is or was consumed by other users, and to install meters and rewire the premises as necessary to remedy such diversion problem.

The petition for rulemaking requested the board adopt a rule applicable to all regulated, metered utility service in the state. This rule would require such utilities to investigate all consumer complaints of apparent utility diversion of service, and, where reasonable cause existed to believe that diversion has taken place, to estimate the usage fairly chargeable to another party or parties, and to pursue such other party or parties exclusively for payment for such service, removing such charges from the account of the complaining consumer. The petition also proposed the remedy of requiring landlords of residential rental premises, at which metered utilities are not separately metered to deliver service only to the customer receiving the bill, to assume sole financial responsibility for such accounts both retroactively and prospectively. The complaint also claimed

to bring this petition on behalf of a class of Vermont residential tenants who had in the two years preceding the complaint, or will have in the future, reasonable cause to believe that their utility meter is metering service consumed by persons other than themselves.

After a hearing on the matter, the hearing officer entered an order on June 9, 1997, stating that (1) board jurisdiction does not extend to landlords, nor does it provide authority for the board to order utility companies onto noncompany property to conduct inspection of wiring; (2) the board does have authority to order utility companies to adjust customer bills; (3) it would be inappropriate at that time for the board to deal generally with the issue of meter diversion through rulemaking or generic investigation; and (4) an investigation into tenants' claims was necessary, and a date for a status conference needed to be set. Shortly thereafter, the defendant landlords were formally dismissed from the action.

On July 9, tenants responded to a July 7 status conference memorandum by filing with the board a motion for class certification, and by withdrawing their earlier motion for preliminary injunctive relief. Tenants informed the hearing officer that none of the customers were still residing in the rental units where the utility diversion giving rise to the complaint occurred.* Tenants also requested that the board review the hearing officer's June 9 order.

In its August 27 order on the motion to review the hearing officer's order, the board agreed with the hearing officer that the board's authority does not extend to the exercise of personal jurisdiction over landlords, nor does Vermont law give it authority to order

---

* At the time the complaint was filed, only Beaupre and Blair still resided in the housing where their respective utility diversion problems arose.

utility companies onto noncompany property, over the objection of the property owner, to conduct inspection of wiring to resolve monetary disputes between landlords and tenants. It also agreed that the board has explicit authority to hear and adjudicate matters arising between customers and their utilities, and this jurisdiction includes the manner of operating and conducting utility-related business, including the billing of customers.

Tenants appealed the board's ruling to this Court. We dismissed the appeal as premature because tenants still had avenues for relief available, such as the possibility of board resolution of customer billing disputes or rulemaking after further evidence was presented, and the petition for class action was still pending. *Beaupre v. Green Mountain Power Corp.*, 168 Vt. 596, 597, 715 A.2d 1292, 1293-94 (1998) (mem.).

On April 1, 1999, the hearing officer denied tenants' request for class certification, leaving the billing disputes to be resolved on an individual basis. He also dismissed Burlington Electric Dept. from the case as the billing dispute between it and tenant Blair had been resolved. On April 15, at a status conference, the remaining utilities agreed to release Beaupre and Gallagher from liability for the unpaid utility bills at the core of this dispute. Tenants agreed to prepare a stipulation acknowledging this release of liability and withdrawing their claims against utilities.

In May, the parties stipulated to the withdrawal of tenants' request that their utility bills be adjusted. The parties further stipulated that a proposed final order be entered by the hearing officer and ordered by the board as the final judgment on the matter. This proposed final order recognized that tenants had withdrawn their claims for adjustment of their respective utility bills, that the board denied tenants' requests for injunctive relief based on lack of personal jurisdiction over the landlords (specifically referring to the hearing officer's order of June 6, 1997, and the board's order of August 27, 1997, to that effect), that the request to enjoin utilities to inspect the wiring in tenants' residences had become moot over time and in light of intervening events, and that the motion to certify the action as a class action had been denied in the hearing officer's procedural order dated April 1, 1999. The proposed final order dismissed the complaint for injunctive relief, and ordered that the proceeding be continued solely as a request for rulemaking.

The hearing officer subsequently prepared a proposed order closing the docket, in which he recognized that the parties had settled their dispute. He recommended the board approve the stipulation, approve the settlement between Blair and Burlington Electric Dept., "convene a workshop to discuss informational and reporting issues . . . associated with allegations of utility service diversion" and consider promulgation of a rule to resolve such issues. He also recommended that the docket not be kept open for the purpose of rulemaking, contrary to the position the parties advocated, reasoning that the prior order on jurisdictional issues precluded the specific rulemaking sought by tenants, and that rulemaking usually proceeds outside the context of a contested case docket.

Notwithstanding their stipulation to the entry of the proposed final order by the hearing officer as the final judgment on the matter, on June 21 tenants made comments to the board about the proposed order closing the docket. See 3 V.S.A. § 811 (if decision in contested case is adverse to a party, adversely affected party is afforded opportunity to file briefs and make oral argument to officials who are to render final judgment). Tenants claimed that, contrary to the conclusion made by the hearing officer, all disputes between the parties

had not been resolved — the only portion which had been resolved was the request that utilities adjust tenants' disputed outstanding utility bills. They stated that tenants did not withdraw their claim for final injunctive relief — only the motion for a preliminary injunction had been withdrawn. They also objected to the closure of the docket, claiming that they had properly sought rulemaking in this proceeding and did not consent to its termination.

On July 14, the board accepted the hearing officer's recommendations and entered the order closing the docket as its final judgment in the matter. The board responded to tenants' comments on the proposed order closing the docket, agreeing with the hearing officer that the contested case docket was not the proper place to initiate rulemaking, and that a rulemaking procedure was an appropriate approach to take in this case, due to its general applicability. It noted that, unlike a contested case which is limited to the parties present, a rulemaking procedure could include utilities that were not parties to this case, would be a more administratively efficient approach and could also result in a broader application of the relief sought by tenants. Furthermore, it stated that, since tenants' billing disputes had been resolved, there was no need for the contested case docket to remain open. Tenants appealed the board's order closing docket to this Court.

We first note that, at oral argument, the utilities argued that the case was not properly before this Court because tenants had failed to exhaust all their administrative remedies as to the hearing officer's decision denying tenants' request for class certification. See 3 V.S.A. § 815(a) ("A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in any contested case may appeal that decision to the supreme court . . . ."). For tenants to have exhausted all their legal remedies in this contested case, the hearing officer must have presented his findings of fact in writing to the board in the form of a proposal for decision, with a majority of board members rendering judgment on that proposal. See 30 V.S.A. § 8(c). Here, the hearing officer presented a proposal for decision to the board, and the full board rendered judgment on the proposal.

Included in the stipulation and proposed final order was the acknowledgment by all the parties that class status had been denied. Tenants made no comment on or objection to this ruling when they submitted, pursuant to 3 V.S.A. § 811, their comments on the proposed order closing the docket. Therefore, they waived any challenge before the board from this adverse ruling. This inaction also waived their right to appeal to this Court the decision to deny class certification. *Passion v. Dep't of Soc. & Rehab. Servs.*, 166 Vt. 596, 598, 689 A.2d 459, 462 (1997) (mem.) (because of failure to object before the board, claim will not be heard on appeal).

Furthermore, notwithstanding tenants' claim in their § 811 comments regarding their earlier request for final injunctive relief, after the May 1999 stipulation there remained no case or controversy. In the stipulation, tenants agreed to withdraw their claims against utilities. Utilities have released tenants from liability for unpaid electric bills. This leaves no actual case or controversy between the parties, and no injury redressable by a decision of this Court. Neither party has challenged the validity of the stipulation, and neither party has been aggrieved by its approval by the board. As tenants no longer have any personal stake in the outcome of this case, they at best retain only a speculative interest in the impact of their generalized grievance. As a result, tenants have no standing to raise these questions on appeal, and this Court has no power to hear the challenges. See

*Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998) (Court may only resolve actual controversies between adverse litigants).

The only issue properly before this Court is the board's refusal to continue tenants' case as a request for rulemaking. We apply a deferential standard of review in appeals from the public service board. *In re Cent. Vt. Pub. Serv. Corp.*, 167 Vt. 626, 626, 711 A.2d 1158, 1159 (1998) (mem.) (citing *In re Green Mountain Power Corp.*, 162 Vt. 378, 380, 648 A.2d 374, 376 (1994)). "Orders issued by the Board enjoy a strong presumption of validity. . . . . [and] [w]e accept the Board's findings and conclusions unless . . . they are clearly erroneous." *Id.*; see also 30 V.S.A. § 11(b) (board findings of fact are upheld unless clearly erroneous).

We concur with the board that initiating a separate rulemaking procedure is the proper method of addressing the petition for rulemaking filed in these proceedings, rather than continuing with a contested case. Contested cases are by definition proceedings in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for a hearing. 3 V.S.A. § 801(b)(2). Because they relate only to the legal rights, duties, or privileges of the specific parties to the contested case, they are inappropriate for the creation of the type of broad, general procedures sought by customers for governing statewide utility diversion issues.

By contrast, rulemaking involves the creation of an agency statement of general applicability which implements, interprets, or prescribes law or policy. *Id.* § 801(b)(9). Because of the general applicability of a rulemaking proceeding, it can have a broader effect, beyond the named parties. The board committed no error in closing the contested case docket in this case. In fact, maintaining a contested case docket for the purpose of initiating rulemaking in this case would

exceed the authority of the board, as a contested case may only address the legal rights, duties, or privileges of a party to the contested case, such as the named utilities present in this action, and not to all Vermont utilities as tenants request.

*Affirmed.*

**Davenport, Supr. J.,** concurring. While I concur with the outcome in this particular case, it is difficult to see how rulemaking can provide an effective procedure for resolving diversion disputes given the board's limited view of its jurisdiction under 30 V.S.A. § 209(b)(3). In its review of the hearing officer's 1997 decision, the board affirmed the hearing officer's conclusion that the board's statutory authority under 30 V.S.A. § 209(b)(3) to "[r]egulate and prescribe reasonable procedures used by companies in . . . billing customers" did not give the board jurisdiction over landlords or the authority to order utility companies onto noncompany property to conduct inspection of wiring. Because the May 1999 stipulation leaves no case or controversy for this Court to decide, our decision today does not reach this critical jurisdictional issue.

In a diversion case a tenant is billed by the utility for electricity that is actually being used by someone other than the tenant. In the case of one of the tenants involved in this appeal, the tenant was charged for the electricity used by the landlord's coin-operated laundromat located in the basement of the apartment building. It is hard to imagine a rulemaking scheme for complaints of this nature that does not include the authority to inspect the wiring in the building in which the tenant's apartment is located. Further, even if the tenant is able to establish a diversion, the only remedy available to the board is a short-term fix that may resolve the issue for the current tenant, but provides no relief for future tenants. Absent authority to

order a landlord to change the wiring so that the tenant's meter only measures electricity actually used by the tenant, the board is limited to simply ordering that the utility adjust the tenant's bill. When the tenant moves out, the next tenant has to start the process all over again.

Because of the parties' stipulation to a dismissal of the pending cases, the issue of whether the board properly construed its authority over billing practices under 30 V.S.A. § 209(b)(3) remains unresolved. Absent resolution of this issue by this Court in some future case or new legislation that specifically expands the board's jurisdiction in diversion cases to include appropriate investigatory and enforcement tools, rulemaking will have little impact in landlord-tenant disputes over utility diversion. In short, the issue of utility diversion stands in pretty much the same place that it stood in August of 1996 when Darlene Beaupre, Anne Blair and Luanne Gallagher filed their petition with the Public Service Board.