STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

|                                              |   |                              |
|----------------------------------------------|---|------------------------------|
|                                              | } |                              |
| In re Omya Solid Waste Facility              | } |                              |
|      Interim Certification and               | } | Docket No. 273-11-08 Vtec    |
|      Final Certification                     | } | Docket No. 96-6-10 Vtec      |
| (Appeals of Residents Concerned about Omya)  | } |                              |
|                                              | } |                              |

Decision and Order on Motion to Dismiss for Lack of Party Status

In Docket No. 273-11-08 Vtec, Appellant Residents Concerned about Omya appealed from a decision of the Vermont Agency of Natural Resources to grant interim certification to Omya, Inc.'s solid waste disposal facility at its Verpol Site in the village of Florence, in the town of Pittsford, Vermont. In Docket No. 96-6-10 Vtec, Appellant appealed from a decision of the ANR to grant final certification to Omya, Inc.'s solid waste disposal facility at the same site.

Appellant Residents Concerned about Omya (Appellant or RCO) is now represented by Sheryl Dickey, Esq., of the Environmental Law Clinic of the Vermont Law School.[1] Appellee-Applicant Omya, Inc. (Applicant or Omya) is represented by Edward V. Schwiebert, Esq., Hans Huessy, Esq., and Michael A. Stahler, Esq. The Vermont Agency of Natural Resources (ANR) is represented by Catherine Gjessing, Esq. and Matthew Chapman, Esq. Amicus curiae Vermont Natural Resources Council (VNRC) is represented by Jon Groveman, Esq.

---

[1] David K. Mears, Esq., who remains listed as co-counsel, is on leave from the Vermont Law School for the 2010–11 academic year.

1

Applicant owns and operates a calcium carbonate processing facility in the village of Florence, located in the town of Pittsford, at which it produces calcium carbonate by grinding up and processing marble. The tailings or waste products of this process have historically been placed in unlined disposal pits, referred to in the certifications as Tailings Management Areas (TMAs). It is undisputed that groundwater underneath the Verpol Site, immediately downgradient from the TMAs, contains aminoethylethanolamine, a chemical component of the flotation agent used by Omya in its processing operations, as well as containing elevated concentrations of the elements iron, manganese, and arsenic. The parties also do not dispute that, in some tests of off-site groundwater, iron and manganese have been detected at concentrations in excess of secondary groundwater standards, although such concentrations are similar to those typically found in area groundwater. It is also undisputed that aminoethylethanolamine and arsenic have not been detected in elevated concentrations in groundwater beyond the boundary of the Verpol Site.

On August 15, 2005, Applicant applied to the ANR for interim certification of its unlined tailings disposal pits. On October 21, 2008, the ANR issued an interim certification for the unlined tailings disposal pits. The interim certification is the subject of Docket No. 273-11-08 Vtec.

On May 8, 2009, Applicant applied for 5-year final certification of its proposed lined tailings disposal facility. On May 6, 2010, the ANR approved final certification of the proposed facility, and, in mid-October, approved an amendment to the final certification. The parties have agreed that the amendment should be considered within the existing final certification appeal. The final certification, as amended, is the subject of Docket No. 96-6-10 Vtec.

<u>Motion to Dismiss for Lack of Party Status</u>

Appeals of ANR decisions are governed by 10 V.S.A. § 8504 and V.R.E.C.P. 5.[2] Under V.R.E.C.P. 5(d)(2), once an appellant has claimed party status as a person aggrieved pursuant to 10 V.S.A. § 8504(a), that appellant is accorded party status unless the Court otherwise determines on its own motion, by ruling on a motion to dismiss, or by ruling on a motion to intervene. Applicants have moved to dismiss the appeals for Appellant RCO's lack of standing and for failure to state a claim upon which relief can be granted.

First, unincorporated associations, as well as for-profit and non-profit corporations, fall within the definition of "person" under 10 V.S.A. § 8502(6). A person is considered to be "aggrieved" by an ANR decision, and therefore entitled to appeal the decision under § 8504(a), if that person "alleges an injury" to a "particularized interest protected by" the listed statutes (which include 10 V.S.A. chapter 48 (groundwater protection) and chapter 159 (waste management), and the injury is "attributable to [the] decision" on appeal, and "can be redressed by" this Court. 10 V.S.A. § 8502(7).

To have standing as an organization, RCO must show that its members have standing individually, that is, that one or more of them meets the criteria of being a "person aggrieved" under § 8502(7). RCO must also show that the interests it asserts are germane to its organizational purpose and that the claim and relief requested do not require the participation of the organization's individual members. <u>In re: Entergy Nuclear/Vermont Yankee Thermal Discharge Permit Amendment</u>, No. 89-4-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Jan. 9, 2007) (Wright, J.) (citing <u>Parker v.</u>

[2] Although, after the July 2010 judicial reorganization, the rules are now referred to in the statute (4 V.S.A. § 30(a)(1)(D)) and in the Reporter's Notes as the "Vermont Rules for Environmental Proceedings," Rule 7 of the rules themselves still gives the rules' title as the "Vermont Rules for Environmental Court Proceedings" and the official abbreviation as "V.R.E.C.P."

Town of Milton, 169 Vt. 74, 78 (1998)); Hunt v. Washington State Apple Advertising Comm., 432 U.S. 333, 343 (1977).

Although RCO has not provided any information about its organizational structure or purpose, it appears to be an unincorporated community association of specific individuals, unlike the two incorporated not-for-profit organizations discussed in Entergy Nuclear/Vermont Yankee, No. 89-4-06 Vtec, slip op. at 6 n.5. Cf. Vermont Agency of Natural Resources v. Upper Valley Regional Landfill Corp., 159 Vt. 454 (1992) (allowing intervenor unincorporated association to appear through lay representative). RCO's membership includes at least five members who are residents of Florence or Pittsford and have submitted statements in this proceeding; RCO's memorandum states that its members use the Pittsford-Florence public water supply or private wells for drinking water and domestic uses.

Five of RCO's members who are residents of Florence have submitted sworn (but not notarized) statements describing their use of surface waters and ground water supplies near Omya's Verpol Site. RCO members Ernest Brod and Umberto Rosato use private wells for their drinking water and domestic uses; their statements state their concern about the potential for chemicals from the unlined TMAs to contaminate their wells. Mr. Rosato also used a brook on the boundary of his property and that of Omya for drinking water as a child, but no longer does so because of his concern about contamination of the water. RCO member Beverly Peterson uses the public water supply in Florence and is concerned about the potential for its contamination with chemicals leaching into the groundwater from Omya's unlined TMAs. RCO members Susan Shaw and Robert DeMarco describe their use and enjoyment of Smith Pond and Otter Creek, claiming that they no longer swim in or eat fish from either water body because of their concern over the potential for contaminated groundwater from the unlined TMAs at Omya's Verpol Site to contaminate nearby surface waters.

4

Absence of Need for Participation of Individual Members

The relief requested by RCO—the remand of the permit applications for consideration by the ANR under a public trust doctrine applicable to groundwater—does not require the participation of its individual members. The issues in this appeal relate to the interests of RCO's members in the effect on groundwater of Omya's disposal of tailings at its Verpol Site, and not to any private claims, for example, for damages or nuisance. See Hunt, 432 U.S. at 343; see also United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 558 (1996) (ruling that a federal statute may allow certain types of organizations to seek damages on behalf of their members).

Individual Standing of RCO Members

The question of whether any individual members of RCO would have standing individually to appeal is analyzed under 10 V.S.A. § 8502(7), which is specific to appeals to this Court. To have individual standing, the individual members of RCO must 1) allege an injury; 2) to a particularized interest; 3) which is protected by the provisions of a law listed in 10 V.S.A. § 8503; 4) that is attributable to the decision made by the Secretary; and 5) that can be redressed by this Court.

A particularized interest is one that is not necessarily shared by the general public, and may include the individual members' recreational or aesthetic interests in nearby surface waters, as well as their use of groundwater. See In re: Champlain Marina, Inc., Dock Expansion, Docket No. 28-2-09 Vtec, slip op. at 6 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.) (citing Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009)); see also Friends of the Earth, Inc. v Laidlaw Environmental Services, 528 U.S. 167, 183 (2000). The named RCO members' interests in a safe domestic and drinking water supply for themselves and their families, and their recreational use of surrounding water bodies, are specific enough to establish that the injury alleged

is to their particularized interests, and not merely to a policy interest of the general public. See Friends of the Earth, Inc., 528 U.S. at 183–84 (concerns about the effects of defendant's discharges on plaintiff's members' recreational, aesthetic, and economic interests in a river were sufficient to establish threat of injury to a particularized interest); see also Entergy Nuclear/Vermont Yankee, No. 89-4-06 Vtec, slip op. at 9 (allegations about potential effect of increased thermal discharge on appellant groups' members' interests in the Connecticut River and its wildlife are specific enough to establish threat of injury to a particularized interest).

RCO argues that its named members would have standing in their own right because their particularized interests are protected by Vermont's groundwater protection statute, 10 V.S.A. ch. 48 and its waste management statute, 10 V.S.A. ch. 159. The groundwater protection statute declares that it is Vermont's policy "to minimize the risks of groundwater deterioration by regulating human activities that present risks to the use of groundwater in the vicinities of such activities." 10 V.S.A. § 1390(4). Additionally, it allows any person to bring an action in equity or tort for, among other things, "altering the character or quality of groundwater." 10 V.S.A. § 1410(c). Similarly, the waste management statute states that certification of a solid waste management facility, where appropriate, shall "contain such additional conditions . . . as the Secretary shall deem necessary to preserve and protect the . . . groundwater and surface water quality." 10 V.S.A. § 6605(b)(6). The individual members' particularized interests in the quality of the groundwater used for their domestic water supplies and potentially affecting the surface waters surrounding the Verpol Site are within the zone of interests protected by these statutes.

For RCO to have standing, it must "allege at least the threat of an injury in fact" to its members' protected interests. Town of Cavendish v. Vermont Public Power Supply Authority, 141 Vt. 144, 148 (1982) (internal quotations omitted). Five individual members of RCO have submitted statements alleging injuries to their

6

interests in the groundwater under the TMAs at issue in these appeals, and in the surface waters surrounding the Verpol Site. RCO members DeMarco and Shaw have alleged ongoing injuries to their fishing and other recreational use of Otter Creek and Smith Pond because of the disposal of tailings at issue in the decisions on appeal. RCO members Brod and Rosato have alleged injuries to their drinking water supplies due to the leaching of chemicals into the groundwater from the tailings disposal. RCO member Peterson also alleges injury to her fishing or other recreational use of Otter Creek, as well as the town water supply that she uses for drinking water and domestic uses. At this pretrial stage of the proceedings, the statute only requires that an organizational appellant's members allege the requisite injuries; they need not prove the injuries they allege until it is necessary to do so at trial.[3] See Parker, 169 Vt. at 76.

The injuries to those interests alleged by the RCO members stem from the Secretary's decisions to issue the interim and final certifications to Omya; that is, those decisions are alleged to allow the continued potential for leakage of leachate from the unlined TMAs even after the lined tailings disposal facility is installed above them. The Court is able to redress these alleged injuries in this de novo appeal, by considering whether to issue the interim and the final certification, and, if issued, what conditions, if any, should be imposed. In making these decisions, the Court is required to apply the substantive standards that were applicable before the ANR. 10 V.S.A. § 8504(h). Thus, the named members of RCO have met all the requirements under 10 V.S.A. § 8502(7) for standing in their own right.

---

[3] Of course, if any issues are raised as to whether such facts are disputed, in connection with a motion for summary judgment, a litigant may have to come forward with affidavits or as otherwise provided in V.R.C.P. 56, to show that there is a genuine issue for trial. V.R.C.P. 56(e).

Organizational Purpose

The final requirement for RCO to have organizational standing is that RCO must demonstrate that the interests it asserts in these appeals are germane to its organizational purpose. Entergy Nuclear/Vermont Yankee, No. 89-4-06 Vtec, slip op. at 7 (citing Parker, 169 Vt. at 78). That is, an organization's "abstract interest in the outcome of an adjudication is insufficient," even in a case, such as Parker and the present appeals, in which the public trust doctrine is implicated. Parker, 169 Vt. at 78.

On the one hand, the declarations of its members that RCO presented to the Court make clear that those members' primary reasons for joining RCO was their concern about the potential environmental effects of Omya's operations. See, e.g., Demarco Declaration at 7; Brod Declaration at 7. However, although RCO's Memorandum in Opposition to Omya's Motion to Dismiss states that "RCO formed in response to concerns over Omya's improper and unregulated waste disposal practices and its impact on local water resources," RCO has not provided any supporting documents, references to websites, or affidavits to the Court regarding RCO's organizational purpose, or, indeed, whether it is a sufficiently defined organization to have an organizational purpose.

Of course, it is not uncommon in Vermont for a group of neighbors concerned about a proposed project to name their informal group with an organizational name for ease of reference when dealing with a proposed project or proceeding with litigation, rather than listing specific individuals as named parties. For example, in In re Unified Buddhist Church, Inc., Indirect Discharge Permit, Docket No. 253-10-06 Vtec, (Vt. Envtl. Ct. May 11, 2007) (Wright, J.), an unincorporated association known as the Lull's Brook Watershed Association was a named party, however, specific individuals were also listed as named appellants, so that the issue of organizational standing did not arise. By contrast, in the present case, although the five RCO

8

members who filed declarations have documented their individual standing to bring these appeals, they are not named appellants and RCO has not submitted sufficient information regarding RCO's organizational purposes for the Court to determine its organizational standing.

Accordingly, on or before November 29, 2010, RCO may supplement its filings regarding RCO's organizational purpose(s), to allow the Court to address the present motion regarding RCO's standing. If any motion to substitute individual RCO members as party-appellants in this matter is contemplated, it shall be filed by the same date. Responses to any such motions or filings may be filed on or before December 8, 2010.

Done at Berlin, Vermont, this 16th day of November, 2010.

_____
Merideth Wright
Environmental Judge