STATE OF VERMONT

SUPERIOR COURT                                        ENVIRONMENTAL DIVISION
Environmental Division Unit                              Docket No. 106-7-14 Vtec

| NRB v. Stratton Corporation |
|---|

## ENTRY REGARDING MOTION

Count 1, NRB Enfc. Land Use Panel AOD (106-7-14 Vtec)

Title:          Motion to Amend Scheduling Order (Motion 12)
Filer:          Treetop at Stratton Condo Assn
Attorney:       A. Jay Kenlan
Filed Date:     September 25, 2015

Response filed on 10/12/2015 by Attorney Lisa B. Shelkrot for Respondent Stratton Corporation
         Opposition

**The motion is DENIED.**

Count 1, NRB Enfc. Land Use Panel AOD (106-7-14 Vtec)

Title:          Motion to Add Expert Witness (Motion 13)
Filer:          Treetop at Stratton Condo Assn
Attorney:       A. Jay Kenlan
Filed Date:     September 25, 2015

Response filed on 10/15/2015 by Attorney Lisa B. Shelkrot for Respondent Stratton Corporation
         Opposition

**The motion is DENIED.**

        This matter is an enforcement action brought by the Natural Resources Board (NRB) against Treetop Development Company, LLC; Treetop Three Development Company, LLC; Intrawest Stratton Development Corporation; and The Stratton Corporation (collectively, Stratton) for violations of Stratton's Act 250 permit for a development of 25 three-unit townhome buildings near Stratton Mountain in the town of Stratton, Vermont (the Project). Stratton and the NRB entered into an assurance of discontinuance (AOD), and filed the AOD with the Court. Treetop Condominium Association (the Association), which represents the owners of the townhome development Stratton constructed, intervened to challenge the adequacy of the AOD.

        When the Association first intervened, it primarily challenged the adequacy of certain remedial measures referenced in the AOD. In a decision dated July 13, 2015, the Court

dismissed on summary judgment the Association's challenges to the adequacy of the remedial measures, holding that those challenges amounted to an impermissible collateral attack on a related Act 250 permit. See NRB v. Stratton Corp., No. 106-7-14 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 3, 2015). After the Court's July 2015 decision, the only issue remaining before the Court is the adequacy of the monetary penalty in the AOD.

Since the July 2015 decision, the parties have been involved in a discovery dispute that has consumed significant judicial resources. On May 29, 2015, the Association served a broad list of interrogatories on Stratton, essentially seeking any communication, record, or observation of the Project's stormwater system made by Stratton or its independent contractors from June 1, 2002 to the present. Stratton objected, and the Association filed a motion to compel. In a September 9, 2015 hearing on the motion, the Court ordered Stratton to respond to the interrogatories, but determined that much of the information had already been disclosed in previous civil litigation between Stratton and the Association. The Court therefore ordered Stratton to make available all documents produced in the civil litigation as well as any other documents relevant to the penalty factors laid out in 10 V.S.A. § 8010.

The Association filed a motion to amend the scheduling order on September 25, 2015, asking this Court to require Stratton to reorganize the documents it produced in civil litigation either by topic or to mimic "the usual course of business." The Association also moved to add an expert witness to the trial list. The deadline for expert disclosures, which has not been extended, was June 5, 2015.

Meanwhile, the Court had been concerned for some time about the Association's standing in this appeal. The particularized interest the Association articulated during its initial motion to intervene was in ensuring the adequacy of stormwater remediation measures. The Court's July 13, 2015 summary judgment decision removed that issue from the scope of our review, leaving only the size of the monetary penalty in issue. The Court was concerned that any injury suffered by the Association was no longer redressable, since any monetary penalty would be paid into public funds. In response to the Association's motions, the Court issued an entry order on October 27, 2015, sua sponte raising the issue of standing and requesting briefing from all parties.

Because we ultimately conclude that the Association does have standing to challenge monetary penalties, we address both standing and the underlying discovery motions.

I.    **Standing**

Section 8020 of Title 10 of the Vermont Statutes allows an "aggrieved person" to intervene in an Act 250 enforcement matter in order to challenge the adequacy of an administrative order, assurance of discontinuance, or civil citation. 10 V.S.A. § 8020(c), (h). To be an aggrieved person, a party must allege an "injury to a particularized interest" protected by one of the environmental statutes listed in 10 V.S.A. § 8003(a), and that injury must be attributable to respondent's violations. See 10 V.S.A. § 8020(a). The Court infers a final requirement in the "aggrieved person" definition—that a party's particularized injury be redressable in a given proceeding. A redressability requirement ensures that the aggrieved

2

party's participation is relevant to the specific matter before the court, and prevents the expenditure of court resources on unresolvable concerns.[1]

In response to the Court's request for briefing, the Association pointed to <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services</u>, 528 U.S. 167 (2007), which held that plaintiff-intervenors have standing in a federal Clean Water Act enforcement action, even when the only issue before the Court is the size of the monetary penalty.[2] <u>Id</u>. at 185–86. The <u>Laidlaw</u> Court reasoned that the deterrent effect of a monetary penalty was enough to redress the plaintiff's particularized injury, so long as there is a reasonable possibility violations could recur. See <u>id</u>. at 187–88. The Court did acknowledge, however, that "there may be a point at which the deterrent effect of a claim for civil penalties becomes so insubstantial or so remote that it cannot possibly support citizen standing." <u>Id</u>. at 186.

Two of the other parties in this suit, the NRB and the Vermont Agency of Natural Resources filed briefs to support the Association's standing. These state agencies are required by statute to support third parties' standing to intervene in enforcement matters. See 10 V.S.A. § 8020(i); see also 40 C.F.R. § 123.27(d) (requiring states with delegated enforcement authority under the federal Clean Water Act to provide for public participation in enforcement suits).

In response to the Association's brief, Stratton argues that standing under Act 250 is more restrictive than standing under the federal Clean Water Act. The federal Clean Water Act employs a "citizen attorney general" model of enforcement, in which private citizens can bring enforcement actions. Under Act 250, only the NRB can initiate an enforcement action; there is no "citizen suit" provision in the Act. This difference, Stratton argues, means that, while intervenors have a statutorily defined interest in enforcing the law under the Clean Water Act, their role (and their standing) is more narrow in Vermont. See <u>Mem. of the Stratton Corp. Addressing Redressability Requirement</u> at 6 n.4, filed Dec. 14, 2015; see also <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 579 (1992) (Kennedy, J., concurring) ("In my view, Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before. . . .").[3]

The Court appreciates this difference in the state and federal statutory schemes. But the redressability element in the "aggrieved person" definition stems from constitutional

---

[1] The Court also infers a redressability requirement in Section 8020(a) because the statutory language generally tracks the constitutional requirements for standing, and redressability is a component of the constitutional test. See, e.g., <u>Parker v. Town of Milton</u>, 169 Vt. 74 (1998) (outlining requirements for standing). Furthermore, the Vermont Supreme Court has interpreted the phrase "aggrieved" in other statutes to incorporate the general constitutional requirements to for standing. See, e.g., <u>Blum v. Friedman</u>, 172 Vt. 622, 624 (2001) (interpreting the word "aggrieved" in Vermont's open meeting law to incorporate the general standing doctrine, and noting that "[w]e have applied general standing doctrine to similar statutory standing requirements."); see also <u>In re Goddard College CU</u>, No. 175-12-11 Vtec, slip op. at 3 (Vt. Super Ct. Envtl. Div, Jul. 5, 2012) (Walsh, J.) (incorporating a redressability requirement into the test for interested party status in Act 250 proceedings).

[2] The majority of the Association's brief was devoted to arguing either the merits of its case (for a larger penalty) or the merits of the case we have held they may not argue (that remediation measures under the amended Act 250 permit are unsatisfactory). We have gleaned from its brief, however, that the Association's primary argument is that, according to <u>Laidlaw,</u> a larger penalty will deter future violations, which will redress the Association's injury.

[3] In the alternative, Stratton argues that the Court should reverse its decision granting the Association's motion to intervene. We decline to do so.

principles implicit in the statute, and these principles are the same under state and federal law. See Parker v. Town of Milton, 169 Vt. 74, 76–77 (1998). Laidlaw, which addressed constitutional standing, therefore sets the applicable redressability standard.

Under the Laidlaw standard, a higher monetary penalty will provide sufficient deterrence to redress, at least in some measure, the Association's injury. The Association and Stratton have a close relationship, in that Stratton constructed the development in which the Association's members own property, and the Association will assume control of the development's infrastructure in the future. We therefore conclude that the Association has demonstrated standing to challenge the adequacy of the monetary penalty.

## II. **Discovery Motions**

### a. *Motion to Amend Scheduling Order*

In accordance with the Court's ruling in the September 9, 2015 motion hearing, Stratton has made all the documents it produced in its civil litigation with the Association available to the Association's current counsel.[4] Stratton has not rearranged those documents—they are boxed as they were when they were presented to the Association in the civil matter.

The Association objects to the mode of presentation, arguing that Stratton should be required to reorganize the documents for the convenience of the Association, citing V.R.C.P. 34(b)(i). The Association argues that "to simply provide the Association with boxes of the material, and let the Association sort through it to see if it can find anything relevant, is not an appropriate discovery response." Treetop at Stratton Condominium Ass'n, Inc.'s Request to Modify Scheduling Order at 5, filed Sept. 25, 2015.

Rule 34(b)provides, "Unless the parties otherwise agree, or the court otherwise orders: (i) a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." The purpose of this requirement is to "prevent[] a party from mixing critical documents with others in the hope of obscuring their significance." V.R.C.P. 34(b)(i), Reporter's Notes.

There is no suggestion that Stratton deliberately rearranged documents to frustrate discovery. So long as Stratton has not deliberately rearranged the produced documents to hide significant material, it has complied with Rule 34(b)(i), and the Court will not order Stratton to rearrange the documents for the Association's convenience. While the Association may have to "sort through [the boxes] to see if it can find anything relevant," this sorting is a necessary part of litigation, and a predictable consequence of issuing broad discovery requests. The Court therefore **DENIES** the Association's motion to alter the Court's September 9, 2015 scheduling order.

### b. *Motion to Add Expert Witness*

The Association has also moved to add an expert witness, Mr. Thomas Barden, to the trial list. Mr. Barden has significant experience in construction management and consulting. The Association proposes to have Mr. Barden testify as to the economic benefit Stratton

---

[4] The Association was represented by different counsel in the civil litigation.

derived from its Act 250 violations.  See 10 V.S.A. § 8010(c)(2) ("[T]he secretary may also recapture economic benefit resulting from a violation up to the $170,000.00 maximum . . . .").

The deadline for disclosure of expert witnesses was June 5, 2015.  This deadline came nearly a full year after the Association first intervened in this matter.  The Association did not move to extend the deadline until almost four months after the deadline had passed, almost three months after the Court' summary judgment decision narrowed the issues in this matter, and two days after this matter was originally set for trial.[5]

As the Vermont Supreme Court has noted, "The burden of disclosing experts is not a heavy one."  Follo v. Florindo, 2009 VT 11, ¶ 21.  Thus, where a party moves to extend an expert disclosure deadline several months after it has expired, and many months into the case, the Court does not abuse its discretion in denying the motion, even where the movant claims the proposed expert is "crucial."  Id. ¶¶ 20–21.  Here, the Association did not move to extend the deadline until many months after it expired and two days after the case was originally set for trial, all without offering any reason for its delay.  Furthermore, the Association seeks to have Mr. Barden testify about the economic benefit Stratton derived from its violations.  This issue has been on the table since the very start of this litigation.  While the Court recognizes that the focus of this trial has narrowed since the original deadline for expert disclosures, the issues themselves have not changed.  Furthermore, though there was a discovery dispute ongoing throughout the summer of 2015, that dispute should not have affected the Association's ability to identify and disclose experts, and the original discovery schedule did not require discovery responses to be received before expert disclosures were due.[6]  The Court therefore sees no reason to extend the expert disclosure deadline to allow an additional expert, and the Court **DENIES** the Association's motion.

## III.    Conclusion

In the Court's initial request for briefing on standing (issued October 27, 2015), the Court suspended three discovery deadlines—a November 16, 2015 deadline for depositions; a November 30 deadline for additional pre-filed testimony; and a December 1 trial-ready date—pending resolution of the standing issue.  Having resolved that issue in the Association's favor, and assuming that the parties suspended discovery after the Association filed its discovery motions on September 25, 2015, the Court will reinstate these deadlines with the same amount of time as the parties had between the Association's motion and the original deadlines.  Thus:

1.  The parties will complete all depositions by June 15, 2016.

2.  The parties will file all additional pre-filed testimony by July 6, 2016.

3.  The parties will be trial-ready by July 8, 2016.

---

[5] At the time the Association filed its motion to compel, trial was set for September 23, 2015.  Counsel for Stratton moved to continue trial because of a conflict with a religious holiday, and the Court granted the motion to continue at its September 9, 2015 hearing on the motion to compel.  But for this continuance, the Association would have gone to trial without this witness.

[6] The original deadline for written discovery requests was May 29, 2015.  The original deadline for expert disclosures was June 5, 2015.  The deadline for responses to written interrogatories is 30 days after receipt. See V.R.C.P. 33(a).  Therefore, the original schedule did not envision that all discovery responses would be received by the time expert disclosures were due.

5

The Association has requested a five-day trial in this matter. As the Court has noted throughout this case, it is highly unusual for the Court to devote more than a few hours of trial time to the size of monetary penalties in an enforcement matter. There are also many matters on the Court's docket that involve broader and more complex legal issues than those presented in this appeal. In the interest of preserving judicial resources, the Court will allot two days of trial time for this matter: half a day for the NRB to present its case, half a day for Stratton to present its case, half a day for the Association to present its case, and half a day held in reserve.

The parties must file their dates of unavailability for a two-day trial in July, August, or September of 2016 by **May 13, 2016.**

So ordered.

Electronically signed on April 26, 2016 at 03:25 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
Peter J. Gill (ERN 4158), Attorney for Petitioner Natural Resources Board
Lisa B. Shelkrot (ERN 2441), Attorney for Respondent Stratton Corporation
A. Jay Kenlan (ERN 3775), Attorney for Intervenor Treetop at Stratton Condo Assn
Elizabeth B. Schilling (ERN 5715), Attorney for Interested Person Agency of Natural Resources