# Wilbur Parker, et al. v. Town of Milton, et al.

· [726 A.2d 477]

No. 97-422

Present: Amestoy, C.J., Morse, Johnson and Skoglund, JJ., and Katz, Supr. J.,
Specially Assigned

Opinion Filed December 18, 1998

Motion for Reargument Denied February 16, 1999

*John L. Franco, Jr.*, Burlington, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, *Ron Shems*, Assistant Attorney General, and *David Groff*, Law Clerk (On the Brief), Montpelier, for Defendants-Appellees.

**Johnson, J.** Plaintiffs, six individual Vermont residents and two labor unions, appeal a superior court order dismissing their complaint. Plaintiffs opposed the construction of a bridge in the Town of Milton and alleged violations of the public trust doctrine, their constitutional rights to due process and equal protection of the laws, and the Vermont Administrative Procedure Act. The superior court dismissed their complaint for lack of standing with respect to their declaratory judgment action, and failure to state a claim with respect to their constitutional and statutory causes of action. We affirm.

The Town of Milton (Town) applied for a required encroachment permit[1] to build a bridge across Arrowhead Mountain Lake that would connect Route 7 with a town highway and an industrial site owned by Husky Injection Moldings. The Department of Environmental Conservation (DEC) held a public information meeting concerning the Town's permit application after a petition was presented pursuant to 29 V.S.A. § 405(a). The DEC subsequently issued an encroachment permit to the Town of Milton on June 6, 1997, which allowed construction of the proposed bridge.[2]

On July 25, 1997, plaintiffs filed an action in superior court arguing that because the public trust doctrine[3] prevents the Legislature from

---

[1] 29 V.S.A. § 403(a) provides that "no person shall encroach on any of those waters and lands of lakes and ponds under the jurisdiction of the [Vermont water resources] board without first obtaining a permit under this chapter. No permit shall be granted if the encroachment adversely affects the public good."

[2] On July 19, 1997, one individual and one union plaintiff filed an appeal with the Water Resources Board challenging the granting of the permit; however, it was dismissed as untimely. An appeal of this ruling remains pending below and is not before us today.

[3] 29 V.S.A. § 401 states in part: "Lakes and ponds which are public waters of Vermont and the land lying thereunder are a public trust, and it is the policy of the state that

granting rights in the public trust property for private use, *see State v. Central Vt. Ry.*, 153 Vt. 337, 344, 571 A.2d 1128, 1131 (1989), the Legislature therefore has a nondelegable duty to determine whether the bridge at issue in this case in fact serves a public use. Specifically, plaintiffs sought a declaratory judgment stating that, in addition to obtaining an encroachment permit, the Town of Milton is required to obtain (1) a legislative grant of airspace over the lake and (2) a legislative determination that the bridge is a "public use" within the meaning of the public trust doctrine.[4]

Plaintiffs also claim they were denied their rights under the United States Constitution to procedural due process and equal protection because their representative was not allowed to present their interests at the public hearing. Plaintiffs allege that others in attendance at the hearing shouted to prevent their representative from speaking and the DEC officer conducting the hearing ruled their representative out of order. Finally, plaintiffs allege that the encroachment permit violated the Vermont Administrative Procedure Act, 3 V.S.A. §§ 801-849 (VAPA), because it was issued without a "contested case" hearing, which plaintiffs allege is required by 3 V.S.A. § 801(b)(2).

The superior court dismissed plaintiffs' challenge to the encroachment permit, finding that plaintiffs did not have standing to mount such a challenge because they merely asserted the legal conclusion that the public trust was being derogated and did not describe any actual injury, only generalized grievances. The trial court further found that plaintiffs had not alleged elements sufficient to sustain an equal protection claim and were not "aggrieved persons" within the meaning of the VAPA, and therefore dismissed the constitutional and VAPA-based causes of action for failure to state a claim.

## I. The Standing Requirement

We first address whether plaintiffs have standing to request a declaratory judgment with respect to the encroachment permit. A plaintiff must allege facts sufficient to confer standing "[o]n the face of the complaint." *Town of Cavendish v. Vermont Pub. Power Supply Auth.*, 141 Vt. 144, 147-48, 446 A.2d 792, 794 (1982).

The standing requirement originates in Article III of the United States Constitution, which states that federal courts have jurisdiction

---

these waters and lands shall be managed to serve the public good . . . to the extent authorized by statute."

[4] Because of our ultimate disposition in this case, we do not reach the merits of these claims.

only over actual cases or controversies. See U.S. Const. art. III. This requirement has been adopted in Vermont. "The judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution; that is, the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (internal quotations omitted).

An element of the case or controversy requirement is that plaintiffs must have standing, that is, they must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law. The existence of an actual controversy "turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." *Town of Cavendish*, 141 Vt. at 147, 446 A.2d at 794. The standing and case or controversy requirements thus enforce the separation of powers between the three different branches of government by confining the judiciary to the adjudication of actual disputes and preventing the judiciary from presiding over broad-based policy questions that are properly resolved in the legislative arena. See *Allen v. Wright*, 468 U.S. 737, 752 (1984); *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 341, 693 A.2d 1045, 1047-48 (1997).

In Vermont, a plaintiff must demonstrate standing for a court to have jurisdiction over a petition for declaratory relief. See *Town of Cavendish*, 141 Vt. at 147, 446 A.2d at 794; *Gifford Memorial Hosp. v. Town of Randolph*, 119 Vt. 66, 70, 118 A.2d 480, 483 (1955). This is because a declaratory judgment can only "'provide a declaration of rights, status, and other legal relations of parties to an actual or justiciable controversy.'" *Doria v. University of Vt.*, 156 Vt. 114, 117, 589 A.2d 317, 318 (1991) (quoting *Robtoy v. City of St. Albans*, 132 Vt. 503, 504, 321 A.2d 45, 46 (1974)). Otherwise, the judgment would be no more than an advisory opinion, which we lack the constitutional power to render. See *Massachusetts Mun. Wholesale Elec. Co. v. State*, 161 Vt. 346, 363, 639 A.2d 995, 1006 (1994); accord *Lace v. University of Vt.*, 131 Vt. 170, 175, 303 A.2d 475, 478 (1973).

Vermont has adopted a three-part test to determine whether a plaintiff has standing. A plaintiff must, at a minimum, show (1) injury in fact, (2) causation, and (3) redressability. See *Hinesburg Sand & Gravel Co.*, 166 Vt. at 341, 693 A.2d at 1048 (adopting test

articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Stated another way, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct, which is likely to be redressed by the requested relief. See *Allen*, 468 U.S. at 751. The injury must be an "invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, not a generalized harm to the public.

The standing requirement applies to organizations as well as individuals. An association has standing to bring suit on behalf of its members when (1) its members have standing individually; (2) the interests it asserts are germane to the organization's purpose; and (3) the claim and relief requested do not require the participation of individual members in the action. See *Hunt v. Washington State Apple Adver. Comm.*, 432 U.S. 333, 343 (1977). An organization must show a concrete injury; an abstract interest in the outcome of an adjudication is insufficient. See *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). Because an organization's members must have standing for the organization to have standing, we subject the union and individual plaintiffs to the same analysis.

. Plaintiffs in this case argue that invoking the public trust doctrine should relieve them of the requirement to demonstrate individualized harm. They argue that, because members of the public are the beneficiaries of the public trust in navigable waters, mere status as a member of the public should be sufficient to confer standing. They analogize their claimed cause of action to a shareholder's derivative suit. Thus, plaintiffs argue, they need only show a harm to the trust as a whole, not an individualized harm to their own private property.

Contrary to plaintiffs' contention, the standing requirement of particularized injury is not suspended in cases where the plaintiff asserts the public trust doctrine. The Court has already decided this precise question. In *Hazen v. Perkins*, 92 Vt. 414, 105 A. 249 (1918), we found that the defendant, by virtue of the public trust doctrine, had no right to build structures that affected the lake level, and that the defendant's activities "affect[ed] the common rights of all persons and produce[d] a common injury." *Id.* at 421, 105 A. at 251. We further found that the defendant's actions were a public nuisance against which the state would have a remedy. See *id.* Nonetheless, we concluded that the plaintiffs in that case, owners of land abutting the contested body of water, were required to show "that they have suffered some special and substantial injury, distinct and apart from the general injury to the public" to maintain a private suit against

such a public nuisance. *Id.* The impact of the defendant's activities on the plaintiffs' aesthetic enjoyment and use of the water were not deemed to be injuries sufficient to establish standing. See *id.* at 422, 105 A. at 252. Thus, *Hazen* establishes that standing is not conferred on individuals merely by virtue of their status as beneficiaries of the interest protected by the public trust doctrine.

Nevertheless, plaintiffs contend that imposing the standing requirement in the public trust area is contrary to the logic of the public trust doctrine and would defeat its purposes. Even if that were true, standing is a jurisdictional requirement that may not be abrogated in favor of furthering the purposes of the public trust doctrine. Vermont courts addressing requests for declaratory judgment are only empowered to decide justiciable controversies. By requiring plaintiffs to show actual injury to meet the standing requirement, we ensure that the cases before the courts are fully and vigorously litigated in pursuit of genuine interests. Moreover, we do not agree that the standing requirement undermines the public trust doctrine. The purpose of the doctrine is to preserve the public's interest in Vermont's navigable waterways. See 29 V.S.A. § 401. It does not advance the public trust doctrine to permit litigants without a personal stake in the proceedings to claim harm to some generalized interest that they alone articulate, purportedly on behalf of the public interest. Here, plaintiffs' claim of injury is to the economic and employment interests of the public in general. While plaintiffs may have some legitimate concerns about how the proposed project will affect those interests, they may not address them to this Court. Any broad, policy-based inquiry into the economic and employment interests affected should be addressed to the Legislature.

▮ The requirement of an actual, particularized injury cannot be suspended in cases where plaintiffs invoke the public trust doctrine.

## II. Plaintiffs' Constitutional Claims

We next turn to plaintiffs' claims arising out of the events at the public information meeting. In reviewing dismissal for failure to state a claim, we assume that the facts alleged in the complaint are true and affirm only where "'it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove above the claim made in [the] complaint which would entitle [the plaintiff] to relief.'" *Association of Haystack Property Owners, Inc. v. Sprague*, 145 Vt. 443, 446, 494 A.2d 122, 124 (1985) (quoting *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982)).

Plaintiffs seek relief under 42 U.S.C. § 1983, claiming that their constitutional rights to due process and equal protection of the laws were violated because (1) they were denied the minimum essentials of procedural due process because they did not have an opportunity to present their interests at a meaningful time and in a meaningful manner; (2) they were denied procedural due process because the administrative proceeding was conducted by a biased decisionmaker; and (3) they were denied equal protection under the law because they were treated differently from others similarly situated. Both a due process and an equal protection claim must be predicated on some form of state action. The only state action alleged by plaintiffs was the decision of the presiding DEC officer to rule their representative out of order.

First, the requirements of due process apply only to agency decisions that are adjudicative, not legislative. See *In re Stratton Corp.*, 157 Vt. 436, 442, 600 A.2d 297, 300 (1991). The decision whether to grant an encroachment permit does represent an adjudicative function, as plaintiffs claim, but the encroachment permit is not granted or denied at the public information meeting. Rather, the purpose of the meeting is to determine the impact of the encroachment on the public interest. This is a policy determination, involving general facts, and having a prospective application. These are characteristic of the legislative function. See *id.* at 443, 600 A.2d at 301. The public information hearing is not a determination of particular facts and past events, which are characteristics of an adjudicative proceeding. See *id.* Therefore, plaintiffs received all the process to which they were entitled: a public information meeting was held in response to their petition and they received notice of the meeting as required by 29 V.S.A. § 405.

Second, due process protects individuals when their life, liberty, or property is at issue in a proceeding. Plaintiffs' due process claim fails because plaintiffs did not have a cognizable property interest at stake in the public information meeting. Individual property rights are not at issue at the public information meeting; rather, the stated purpose of the meeting is to determine whether the encroachment will adversely affect the public good. See 29 V.S.A. § 405(b). Even if the encroachment permit issue were being decided at the public information meeting, plaintiffs are not the applicants for the permit, and thus they do not have a property interest that is affected by the outcome of the agency's decision on the permit.

■ Finally, an equal protection claim must be premised on some form of discriminatory state action, either in the form of a discriminatory legislative classification or selective enforcement of a facially neutral law. There is no state action present if others attending the public information meeting shouted to prevent plaintiffs' representative from speaking. The only possible basis for plaintiffs' claim, therefore, is the decision of the DEC officer to rule their representative out of order. Because there is no discriminatory legislative classification at issue in this case, plaintiffs are presumed to allege something analogous to selective enforcement, i.e., that they were selectively ruled out of order. To sustain a claim of selective enforcement, plaintiffs must show (1) that they were treated differently from others similarly situated and (2) that this selective treatment was based on impermissible considerations such as race, religion, intent to inhibit the exercise of constitutional rights, or malicious intent to injure. See *LeClair v. Saunders*, 627 F.2d 606, 609 (2d Cir. 1980). Plaintiffs have not indicated that the DEC officer ruled their representative out of order on the basis of any suspect classification or illicit motive. Therefore, plaintiffs have not alleged any facts that suggest there is a basis for granting relief.

### III. Plaintiffs' VAPA-based Claim

Plaintiffs' VAPA-based claim fails for the same reason that plaintiffs' due process claim fails, namely, because plaintiffs had no cognizable interest at stake in the proceedings at which the alleged violation occurred. Plaintiffs assert that VAPA was violated because no contested case hearing was held, arguing that 3 V.S.A. § 801(b)(2) requires a contested case proceeding for any licensing proceeding. In fact, § 801(b)(2) merely defines a contested case as "a proceeding, including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." The definitions provided in this section help clarify the statutory sections that follow but impose no legal obligation in and of themselves. Plaintiffs presumably meant to refer to the requirement imposed by 3 V.S.A. § 814(a), which states that "[w]hen the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases shall apply."

■ The definition of a contested case cited by plaintiffs makes clear, however, that the function of contested cases is to adjudicate the

rights of a party to agency action. A party for purposes of the VAPA is defined as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." 3 V.S.A. § 801(b)(5). Black's Law Dictionary defines a party as "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding." Black's Law Dictionary 775 (6th ed. abr. 1991). Because plaintiffs were not parties to the decision to grant or deny the encroachment permit, they cannot register a demand for a contested case hearing.

Plaintiffs have not alleged a special and substantial injury, nor have they alleged facts sufficient to suggest any conceivable theory of relief under the United States Constitution or the Vermont Administrative Procedure Act. Their claims were properly dismissed.

*Affirmed.*