2005 VT 105

**John Mark BRIGHAM, et al. v. STATE of Vermont, David Larsen, Acting Commissioner of Education and the Vermont Board of Education**

[889 A.2d 715]

No. 04-295

¶ 1. September 12, 2005. Plaintiffs, a group of public-school students and a group of taxpayers, appeal a superior court decision dismissing their complaint pursuant to Vermont Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff students contend that Act 60 fails to protect their right to an equal educational opportunity under the Vermont Constitution. Plaintiff taxpayers assert that Act 60's method of taxation to fund education violates their rights under the Vermont Constitution because it imposes a disproportionate burden upon the taxpayers in their towns compared to similarly situated taxpayers in other towns. The superior court dismissed both claims on grounds of judicial self-restraint. We reverse the superior court's decision, and remand for further proceedings.

¶ 2. Plaintiff students are four children who attend Whitingham School, Wilmington Middle High School, and Chester-Andover Elementary School. They argue that the State has failed to provide them with a substantially equal educational opportunity in violation of Chapter I, Article 7[1] and Chapter II, § 68[2] of the Vermont Constitution, and seek an injunction and declaration that Act 60 is unconstitutional. They argue that the Equal Educational Opportunity Act of 1997 (Act 60) does not remedy the inequality of educational opportunity that we identified in *Brigham v. State*, 166 Vt. 246, 268, 692 A.2d 384, 397 (1997) (*Brigham I*). Because of nondiscretionary expenditures on special education, transportation, and the school facilities themselves, plaintiffs allege that the school districts have less money available to fund instruction and curriculum. Plaintiffs contend that the curriculum offered at Whitingham School is inadequate because it is so limited. They also assert that Wilmington Middle High School's facilities are in substandard condition and insufficient funds are available under the current education-funding scheme for replacement. The students argue that these deficiencies demonstrate the State's failure to provide them with a substantially equal educational opportunity compared to the educational opportunities of students in other public school districts, which offer more curriculum choices and have modern facilities.

¶ 3. Plaintiff taxpayers are ten property owners who reside in Whitingham, Wilmington, and Andover, and pay local and state education taxes to their respec-

---

[1] Chapter I, Article 7, in part, provides: "That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family, or set of persons, who are a part only of that community ...." Vt. Const. ch. I, art. 7.

[2] Chapter II, § 68, in part, provides: "Laws for the encouragement of virtue and prevention of vice and immorality ought to be constantly kept in force, and duly executed; and a competent number of schools ought to be maintained in each town unless the general assembly permits other provisions for the convenient instruction of youth...." Vt. Const. ch. II, § 68.

tive towns. The taxpayers allege that they pay disproportionately high state and local education taxes compared to similarly situated taxpayers of other Vermont towns. They also allege that because the State is inadequately funding education under Act 60, they are forced to pay higher education taxes than other taxpayers who own property of the same value and have identical adjusted gross incomes. They assert that this disparate treatment violates their rights under Chapter I, Article 9 of the Vermont Constitution.[3] They seek an injunction and declaration that Act 60 is unconstitutional.

¶ 4. The State moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, Rule 12(b)(1) for lack of subject-matter jurisdiction, and Rule 12(b)(7) for failure to join indispensable parties.[4] The State argued that the court did not have subject-matter jurisdiction because plaintiffs lacked standing and because plaintiffs' claims were moot. The State contended that plaintiffs' case was mooted by Act 68, which was passed after plaintiffs filed their complaint, because Act 68 established new methods of funding education that ameliorated the deficiencies that plaintiffs alleged were present in Act 60. The State also argued that

---

[3] Chapter I, Article 9, in part, provides: "That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute the member's proportion towards the expense of that protection . . . ." Vt. Const. ch. I, art. 9.

[4] The State did not raise on appeal the issue of whether the plaintiffs' failure to join the school districts as indispensable parties warrants dismissal under Rule 19. Thus, we decline to consider this argument here.

the consolidation of the Whitingham and Wilmington school districts, approved in 2003, moots plaintiffs' claims because it will improve the taxpayers' allegedly high tax burden and the students' allegedly poor curriculum choices.

¶ 5. After the State filed its motion to dismiss, plaintiffs moved to amend their complaint pursuant to Rule 15(a). They sought amendment to update the statutory sections in their complaint that referred to Act 60, so that their complaint would also refer to the pertinent statutory sections of Act 68. Plaintiffs did not seek to alter their legal argument on the constitutionality of the education-funding system; they explained that Act 68 did not remedy the defects of Act 60 identified in their original complaint. Rather, they moved to amend the references to Act 60 contained in their complaint.

¶ 6. The superior court ruled concurrently on the State's motion to dismiss and the plaintiffs' motion to amend. The court granted the motion to dismiss and thus denied plaintiffs' motion to amend as moot. Without basing its decision on one identifiable legal theory, the court relied on a general notion of judicial restraint to reach the conclusion that the court should not hear the case. The court interpreted our decision in *Brigham I* as requiring the courts to let the Legislature remedy Vermont's education-funding system's deficiencies without judicial interference. Explaining that the issue is not nonjusticiable per se, the court stated:

> As *Brigham* exemplifies, the constitutionality of school funding is not non-justiciable in an absolute sense. But the modes of judicial self-restraint have more prudential texture than that of the classic political question doctrine alone. Mootness and ripeness issues aside, the continuation of this case would not only be disrespectful

of the political process underway, it could harm the political process by delaying it or distracting attention and resources more productively focused on it, or derailing it with unnecessary mandates or, worse, the unnecessary perception of mandates. The Legislature has not responded to *Brigham* by refusing to act, or by acting half-heartedly; the Legislature plainly heard *Brigham*'s beacon and is now finding its way. Rather than enforcing *Brigham*, this litigation runs counter to it. (citation omitted).

¶ 7. Plaintiffs contend on appeal that the superior court erred in granting the State's motion to dismiss. They argue that it is the role of the judiciary to determine whether the state-education-funding system violates their constitutional rights.

¶ 8. The issue in this case is whether the superior court erred in granting the State's motion to dismiss on grounds of judicial restraint. Our decision in *Brigham I* recognizes that the court has a duty to hear plaintiffs' claims on the alleged constitutional deficiencies of the education-funding system. Therefore, because plaintiffs have pleaded facts sufficient to satisfy the liberal Rule 12(b)(6) standard, the plaintiffs' claims must be allowed to go forward. We emphasize that although plaintiffs may not ultimately prove the alleged violations once a full record is developed, a Rule 12(b)(6) motion is not the proper procedure for testing the factual support for plaintiffs' claims. We reverse and remand for further proceedings, including a ruling on plaintiffs' motion to amend their complaint.

¶ 9. Rather than conducting an analysis on whether plaintiffs met the requirements of Rule 12(b)(6), the superior court improperly relied on the notion of judicial restraint in dismissing the complaint. The doctrine of judicial self-restraint derives from Article III of the United States Constitution, which states that federal courts have jurisdiction only over actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *Parker v. Town of Milton*, 169 Vt. 74, 76-77, 726 A.2d 477, 480 (1998). Vermont has adopted the case-or-controversy requirement. *Id.* at 77, 726 A.2d at 480. The case-or-controversy requirement of Article III incorporates the doctrines of standing, mootness, ripeness, and political question, all of which help define and limit the role of the courts to ensure proper balance among the three branches of government. *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 340, 693 A.2d 1045, 1047 (1997). In *Hinesburg Sand*, we noted that "[o]ne of the 'passive virtues' of the standing doctrine [and case-or-controversy requirement] is to promote judicial restraint by limiting the occasions for judicial intervention into the political process." *Id.* at 340-41, 693 A.2d at 1047-48 (citing A. Bickel, *The Least Dangerous Branch* 111-98 (2d ed. Yale Univ. Press 1986) (1962)). Thus, for a court to maintain its proper role among the three branches of government, it must exercise judicial restraint by not asserting jurisdiction over claims that are moot or not yet ripe, or that pose a political question. See *id.* Additionally, if a plaintiff does not have standing, a court must exercise judicial restraint and dismiss the complaint for lack of subject-matter jurisdiction. See *id.* at 341, 693 A.2d at 1048. Prudential judicial restraint in and of itself, however, does not excuse the court from its duty to uphold the constitution.

¶ 10. Adjudicating cases involving alleged violations of plaintiffs' constitutional rights resulting from a legislative enactment does not undermine the legislative process, nor is it disrespectful of the other branches of government.

Rather, the court abdicated its duty to uphold the Vermont Constitution by refusing to entertain plaintiffs' claims. See Vt. Const. ch. II, § 5 ("The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others."). Act 60 is the Legislature's remedy for the constitutional defects we found in *Brigham I*. 166 Vt. at 268, 692 A.2d at 397. Whether or not the Legislature has structured the education-funding system so that Vermont students are provided with a substantially equal educational opportunity is a constitutional issue properly before the court. Moreover, the taxpayers' constitutional claim that they are disproportionately taxed under Act 60 is similarly deserving of the court's attention, because it is the province of the court to decide whether Vermont's laws comply with the State Constitution. The doctrine of judicial restraint does not allow the court to relinquish its duty to interpret the constitution when judicial intervention may potentially block legislative action.[5] Therefore, the superior court improperly dismissed plaintiffs' claims under Rule 12(b)(6) on grounds of judicial restraint.

¶ 11. The purpose of a Rule 12(b)(6) motion is "to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002). In reviewing the lower court's dismissal under Rule 12(b)(6), we must assume that the factual allegations in the complaint are true. *Ass'n of Haystack Property Owners, Inc.*

---

[5] In its decision, the superior court referred to an ongoing effort in the Legislature to address the education-funding system. There is nothing in the record to indicate that such a process is occurring; therefore, we decline to consider its relevance here.

*v. Sprague*, 145 Vt. 443, 444, 494 A.2d 122, 123 (1985). To sustain dismissal, the court must have no doubt that the alleged facts, if proven, would not entitle the plaintiff to relief under any legal theory. *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554, 830 A.2d 71 (mem.).

¶ 12. The State advances several arguments, many of which go to the merits of plaintiffs' case, in favor of dismissing the complaint. At this early stage in the litigation, however, a court should be reluctant to dismiss a plaintiff's claims, and should not consider the merits of whether a plaintiff's claims will ultimately succeed. See *Sprague*, 145 Vt. at 446-47, 494 A.2d at 125 ("A motion to dismiss for failure to state a claim is not favored and rarely granted."); *Golden v. G.C. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) ("The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."); 5B C. Wright & A. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004) (stating that a Rule 12(b)(6) motion "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case.").

¶ 13. The State first argues that plaintiffs have not met their burden under Rule 12(b)(6) because their allegations fail to demonstrate that they receive an unequal educational opportunity compared to students attending other Vermont school districts. To support their claim that the State has violated their constitutional right to an equal educational opportunity under *Brigham I*, the students alleged that the State does not provide adequate funding for education. The students argued that because of Act 60's inadequate funding, their schools do not have enough money to spend on curriculum. They alleged that Whitingham

School offers its high-school students such limited curriculum choices that many students have taken all offered courses by their senior year and fill their schedule with gym classes. They compared the number of course offerings at Whitingham with that of Essex High School to show that students in Essex have substantially greater curriculum choices. We emphasize that at this early stage in litigation we do not consider the merits of these allegations, but consider only whether these allegations are sufficient to state a claim under the Constitution, as interpreted in *Brigham I*. Under the Rule 12(b)(6) standard, we conclude that the students' allegations are sufficient to allow their claim to proceed.

¶ 14. The State next argues that the taxpayers' claim should be dismissed under Rule 12(b)(6) because they failed to raise any constitutional defects in Act 60. The State argues that the taxpayers will not be able show that Act 60's taxation system lacks a rational basis, and then concludes on the merits of plaintiffs' case that "[t]his tax scheme is rationally related to the objective of providing substantially equal access to education revenues."

¶ 15. The taxpayers allege that Act 60 violates their constitutional right to be taxed the same as other similarly situated taxpayers. In *One Church Street*, we set out the basic requirements of the Proportional Contribution Clause. *In re Property of One Church St. City of Burlington*, 152 Vt. 260, 266, 565 A.2d 1349, 1352 (1989) (requiring legislative classifications of taxpayers to be reasonably related to the purpose for which the classification was established, and fairly and equitably applied among like classes of taxpayers). To demonstrate how the State is violating the Proportional Contribution Clause, the taxpayers allege that a statistical analysis will reveal the combined local and state education-related property taxes in their towns to be among the highest in the state. Again, because of the procedural posture of this case, we must accept plaintiffs' allegations as true and cannot consider the State's rebuttal that Act 60's taxation scheme has a rational basis. The taxpayers' allegations are sufficient to allow their claims to proceed.

¶ 16. The State also argues that we should dismiss the complaint because plaintiffs lack standing to maintain their claims. To satisfy the standing requirement, a plaintiff must show: (1) injury-in-fact, (2) causation, and (3) redressability. *Parker*, 169 Vt. at 77, 726 A.2d at 480. Thus, the plaintiff must allege a personal injury traceable to the defendant's conduct that the court can remedy by granting the sought-after relief. *Id.* at 78, 726 A.2d at 480.

¶ 17. The State's arguments that plaintiffs do not have standing ignore our decision in *Brigham I*. Just as the students and taxpayers in *Brigham I* had standing to maintain their claims for unequal educational opportunity and disproportionate taxation, the plaintiffs in this case, who allege the same type of injuries, also have standing. Plaintiffs here seek an injunction and declaration that Act 60 is unconstitutional. Just as the plaintiffs' injuries in *Brigham I* were remedied by our declaration that the Foundation Plan was unconstitutional, 166 Vt. at 268, 692 A.2d at 397, the plaintiffs' injuries in this case will also be redressed if they prevail on the merits of their claims and the court declares the challenged aspects of Act 60 and Act 68 to be unconstitutional.

¶ 18. The State's final argument is that the court lacks subject-matter jurisdiction because plaintiffs' claims were mooted by Act 68 and the consolidation of the Whitingham and Wilmington school districts. The State contends that Act 68 corrected the alleged constitutional deficiencies of Act 60's funding mechanisms, and that the consolidation of the schools

will relieve plaintiffs' alleged tax burdens and poor curriculum choices. Plaintiffs contend that their claims are not moot because neither Act 68 nor the school-district consolidation remedied the constitutional violations they allege in their complaint. As plaintiffs correctly point out, a change in the law does not automatically moot a claim that is based on a prior version of the law. *Northeastern Florida Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (recognizing that constitutional challenge to statute was not mooted by subsequent statutory amendment because plaintiffs claimed that amended statute "disadvantage[d] them in the same fundamental way"). We decline to consider the State's merit-based argument that plaintiffs' case is moot, and remand for the superior court to rule on the plaintiffs' motion to amend their complaint.

*Reversed and remanded.*