NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 136

No. 2018-164

| | |
|---|---|
| H. Brooke Paige | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Civil Division |
| | |
| State of Vermont, et al. | October Term, 2018 |

Michael J. Harris, J.

H. Brooke Paige, Pro Se, Washington, Plaintiff-Appellant.

Bernard D. Lambek of Zalinger Cameron & Lambek, PC, Montpelier, for Defendant-Appellee
  Washington Town School Board.

Thomas J. Donovan, Jr., Attorney General, and Philip Back, Assistant Attorney General,
  Montpelier, for Defendants-Appellees State of Vermont, et al.

PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.    **EATON, J.**   Plaintiff H. Brooke Paige, a taxpayer and resident of Washington, Vermont, appeals the civil division's dismissal of his complaint for declaratory and injunctive relief against the State of Vermont and the Washington Town School Board. In his complaint, he asserted that Act 46, a 2015 state law related to education funding, spending, and governance, impermissibly coerced town residents into voting to merge school districts. He further alleged that Act 46 deprived town residents of local control of education and would result in unequal educational opportunities in violation of the Education and Common Benefits Clauses of the Vermont Constitution. We conclude that plaintiff lacks standing to bring this action and therefore affirm the decision below.

¶ 2.     In 2015, the Vermont Legislature enacted Act 46 to address a statewide trend of declining student enrollment and increased education costs. 2015, No. 46, § 1. The law was intended "to move the State toward sustainable models of educational governance" by encouraging local action to "maximize operational efficiencies through increased flexibility to manage, share, and transfer resources, with a goal of increasing the district-level ratio of students to full-time equivalent staff." Id. § 2. To achieve this goal, Act 46 established a multi-year process for merging existing school districts into newly created districts with preferred governance structures. The law contained financial incentives for districts to voluntarily merge. Id. § 6 (providing for decreased homestead property tax rate, merger support grant, and transition facilitation grant to districts that merged before July 2017); id. § 7 (providing for decreased homestead property tax rate and merger support grant to districts that merged between July 2017 and July 2019). The law directed the State Board of Education to order districts that had not acted by November 2018 to merge or realign where necessary. Id. § 10.

¶ 3.     Plaintiff is a registered voter, taxpayer, and justice of the peace in the town of Washington. In May 2017, Washington residents voted to merge the Washington school district with that of the neighboring town of Orange pursuant to Act 46. That August, plaintiff filed an administrative complaint with the Secretary of State alleging that the merger vote violated Vermont and federal election laws because he and fellow Washington residents were coerced by Act 46 into voting for the merger. The Secretary dismissed the complaint, stating that administrative relief was unavailable because the merger vote was not a primary or general election in which a federal office appeared on the ballot.

¶ 4.     In September 2017, plaintiff filed a complaint for declaratory and injunctive relief in the civil division against the State of Vermont, the Vermont Board of Education, Secretary of Education Rebecca Holcombe, Secretary of State James Condos, and the Washington Town School Board. In his amended complaint, he alleged that Act 46 deprived Washington residents of local control of education in violation of the Education Clause of the Vermont Constitution, ch.

2

II, § 68; deprived town residents of the right to equal educational opportunities expressed in Brigham v. State (Brigham I), 166 Vt. 246, 692 A.2d 384 (1997); and impermissibly coerced voters in violation of the Vermont Constitution and state and federal election laws. He asked the court to void the merger vote and order the Washington Town School Board restored to its previous governance structure. He also asked the court to reverse the Secretary of State's decision dismissing his administrative complaint. He sought an award of $10,000 in compensatory and punitive damages to the Washington Town School Board, and $1.00 in damages to him for bringing this action, plus costs.

¶ 5. The State moved to dismiss plaintiff's complaint for lack of standing and failure to state a claim for which relief could be granted. The trial court held that plaintiff had standing as a Washington taxpayer because he alleged that as a result of the merger, Washington residents would bear an increased financial burden due to the additional costs associated with the Orange school. However, it determined that plaintiff failed to state a claim that Act 46 violated the Education Clause or the Common Benefits Clause as interpreted in Brigham I, or that the law impermissibly coerced voters in contravention of Articles 8 or 18 of the Vermont Constitution or state or federal election statutes. The court therefore dismissed plaintiff's complaint and upheld the dismissal of his administrative action. Plaintiff appealed to this Court.

¶ 6. On appeal, plaintiff argues that the trial court erred in dismissing his claim that Act 46 violates chapter II, § 68 of the Vermont Constitution.[1] We conclude that plaintiff lacks standing to assert his claim, and therefore affirm the trial court's dismissal of plaintiff's action. See Sorge v. State, 171 Vt. 171, 174 n.*, 762 A.2d 816, 818 n.* (2000) (explaining that Supreme Court may affirm correct result for reasons other than those stated by trial court).

---

[1] In his appeal to this Court, plaintiff does not challenge the trial court's dismissal of his claims under the Common Benefits Clause, Articles 8 and 18, and state and federal election statutes, or the dismissal of his administrative appeal. He has therefore waived review of these claims, and we do not consider them in assessing plaintiff's standing. See R. Brown & Sons, Inc. v. Int'l Harvester Corp., 142 Vt. 140, 142, 453 A.2d 83, 84 (1982) ("Issues not briefed on appeal are deemed waived.").

¶ 7. Standing is a necessary prerequisite to a petition for declaratory judgment. Doria v. Univ. of Vt., 156 Vt. 114, 117, 589 A.2d 317, 318 (1991). The standing requirement derives from Article III of the United States Constitution, which provides that federal courts only have the power to decide "actual cases or controversies." Parker v. Town of Milton, 169 Vt. 74, 76–77, 726 A.2d 477, 480 (1998); U.S. Const. art. III. Vermont has adopted this case-or-controversy requirement. See In re Constitutionality of House Bill 88, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) ("The judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution; that is, the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction." (quotation omitted)).

¶ 8. "An element of the case or controversy requirement is that plaintiffs must have standing, that is, they must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." Parker, 169 Vt. at 77, 726 A.2d at 480. The standing doctrine protects the separation of powers between the branches of government by ensuring that courts confine themselves to deciding actual disputes and avoid intervening in broader policy decisions that are reserved for the Legislature. Id.

¶ 9. To demonstrate standing, a plaintiff must allege injury in fact, causation, and redressability. Brigham v. State (Brigham II), 2005 VT 105, ¶ 16, 179 Vt. 525, 889 A.2d 715 (mem.). In other words, the plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct, which is likely to be redressed by the requested relief." Parker, 169 Vt. at 78, 726 A.2d at 480. The alleged injury "must be an 'invasion of a legally protected interest,' not a generalized harm to the public." Id. (citation omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Further, the injury "must be reasonably expected and not based on fear or anticipation." Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 9, 182 Vt. 234, 936 A.2d 1286.

4

¶ 10.   A plaintiff must allege facts sufficient to establish his or her standing "[o]n the face of the complaint." Town of Cavendish v. Vt. Pub. Power Supply Auth., 141 Vt. 144, 147–48, 446 A.2d 792, 794 (1982). "Because standing is a necessary component of the court's subject matter jurisdiction, it cannot be waived, and its absence can be raised at any time." Unifund CCR Partners v. Zimmer, 2016 VT 33, ¶ 19, 201 Vt. 474, 144 A.3d 1045. Whether plaintiff has standing is a legal question that we review without deference to the decision of the trial court. Taylor v. Town of Cabot, 2017 VT 92, ¶ 9, __ Vt. __, 178 A.3d 313.

¶ 11.   We addressed the issue of standing to challenge a state education law in Brigham II, 2005 VT 105. In that case, a group of public-school students and a group of taxpayers from the towns of Whitingham, Wilmington, and Andover challenged the Equal Educational Opportunity Act of 1997, also known as Act 60. The students alleged that Act 60 failed to protect their right to an equal educational opportunity under the Vermont Constitution because it left their schools with less money to fund instruction and curriculum or make necessary renovations. The taxpayers alleged that they paid disproportionately high state and local education taxes compared to similarly situated taxpayers of other Vermont towns. They also alleged that because the State was inadequately funding education under Act 60, they were forced to pay higher education taxes than other taxpayers who owned property of the same value and had identical adjusted gross incomes. We held that both the students and taxpayers met the elements of standing because they had adequately alleged that the law injured them personally and their injuries would be redressed if they prevailed on the merits of their claims. Id. ¶ 17.

¶ 12.   Here, plaintiff alleged that he is a resident and taxpayer of the town of Washington; has faithfully attended town meetings and school-board meetings since becoming a resident in 1988; and currently serves as a justice of the peace in the town. He asserted that the Act 46 merger will subject Washington residents to higher education costs and school taxes and make them responsible for the rehabilitation of the Orange Village School, while depriving them of the ownership of their town school and the sole right to make educational decisions for their students.

5

In an exhibit attached to his amended complaint—an informational pamphlet regarding the Washington-Orange merger that he prepared—he claimed that the Washington school business manager stated that Orange and Washington would equally share the cost of education under a merger, and that Orange's 2017 school budget is about $350,000 greater than Washington's. Accordingly, he asserted, the merger would result in Washington taxpayers paying approximately $175,000 more than they would have otherwise.[2] He further alleged that Act 46's incentives will create disparities in funding between towns, thereby denying equal educational opportunities in violation of our decision in Brigham I.

¶ 13. Accepting these allegations as true, they are insufficient to give plaintiff standing. It is undisputed that plaintiff is neither a public-school student nor a parent of a public-school student enrolled in a school subject to Act 46. He therefore is not personally affected by the law's alleged deprivation of equal education opportunities and lacks standing to challenge it on that basis. Cf. Brigham II, 2005 VT 105, ¶ 17. Similarly, the transfer of ownership of the town school to the new district and the dilution of control over educational decisions for town students are not injuries personal to plaintiff but are shared with taxpayers generally, and do not give him standing to challenge Act 46. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006) (holding that state taxpayers' allegations that state tax credit depleted state treasury and imposed disproportionate burdens on them were insufficiently concrete and particularized to confer standing).

¶ 14. The trial court found, however, that plaintiff had standing to bring this action as a Washington taxpayer because he alleged that Washington residents would bear an additional financial burden as a result of the merger. This was error. "Although taxpayer suits in Vermont

---

[2] Although the text of the exhibit is not reproduced in the complaint, it was attached to the complaint and is specifically referred to therein. "[T]he general rule is that when the complaint relies upon a document such a document merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 10 n.4, 186 Vt. 605, 987 A.2d 258 (mem.) (quotation and alterations omitted).

are generally recognized as appropriate vehicles for seeking relief from official action, to have standing a plaintiff must still demonstrate that she has either sustained some direct loss or that municipal assets have been improperly wasted." Baird v. City of Burlington, 2016 VT 6, ¶ 21, 201 Vt. 112, 136 A.3d 223 (quotation omitted). This case does not involve a challenge to a town's use of municipal assets.[3] Cf. Taylor, 2017 VT 92, ¶ 12 (holding that town residents had municipal-taxpayer standing to challenge town's use of municipal funds). Rather, plaintiff seeks to challenge a state law based on his taxpayer status. He accordingly must show that he will suffer a direct financial injury as a result of the legislation. See Schievella v. Dep't of Taxes, 171 Vt. 591, 592, 765 A.2d 479, 481 (2000) (mem.) (holding plaintiffs lacked standing to challenge certain provisions of homestead-property-tax-adjustment statute where complaint did not allege those provisions would affect plaintiffs' property-tax liability now or in future); Doremus v. Bd. of Educ. of Borough of Hawthorne, 342 U.S. 429, 434 (1952) (explaining that taxpayer seeking to challenge state statute must show "direct injury"); N.Y. State Teachers Ret. Sys., 60 F.3d at 110 ("State taxpayers, like federal taxpayers, do not have standing to challenge the actions of state government simply because they pay taxes to the state.").

¶ 15.    Plaintiff failed to sufficiently allege on the face of his complaint that he has been or will be directly injured in a cognizable way by Act 46. Unlike the taxpayers in Brigham II, he does not allege that he pays disproportionately high state and local education taxes compared to similarly situated taxpayers of other Vermont towns, or that he pays higher education taxes than other taxpayers who own property of the same value and have identical adjusted gross incomes. His allegation that as a result of the merger, Washington residents as a whole will be subjected to higher education costs and school taxes is insufficiently specific to confer standing on plaintiff.

---

[3] To the extent plaintiff alleges that town funds will be affected by the state law, this does not suffice to give plaintiff standing to sue the State. See Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. N.Y. State Teachers Ret. Sys., 60 F.3d 106, 111 (2d Cir. 1995) (declining to extend availability of municipal taxpayer standing to action where municipal taxpayer challenged expenditure of municipal funds mandated by state law, particularly since taxpayer was suing state).

¶ 16.   Plaintiff argues in the alternative that he has standing to bring this action as a justice of the peace because when he took office, he swore an oath that he "will not, directly or indirectly, do any act or thing injurious to the Constitution." Vt. Const. ch. II, § 56.  Plaintiff cites no law in support of this assertion, which we hold to be meritless.  Justices of the peace are empowered to solemnize marriages, notarize documents, and serve on the board of civil authority in the town where they reside.  18 V.S.A. § 5144; 24 V.S.A. §§ 441, 801.  No statute vests justices of the peace with official standing to bring actions to challenge state laws, even if the laws are allegedly unconstitutional. The oath sworn by plaintiff simply requires him not to do anything injurious to the Constitution; it does not impose an affirmative duty to bring civil actions against the State.  As with any other plaintiff in a declaratory judgment action, plaintiff must allege some direct injury to himself to have standing.  He failed to do so, and his complaint therefore was properly dismissed.[4]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[4] The Court denied plaintiff's requests for permission to file an oversize brief and for additional oral argument time in this matter.  Despite these rulings, at oral argument plaintiff presented a letter to the Court that he claimed was a summary of his oral argument.  Additional exhibits were attached to the letter.  The Court will not consider any information or arguments contained in the letter, as this would effectively result in circumvention of the court's earlier orders and the appellate rules.  See V.R.A.P. 10 (stating that record on appeal is limited to original documents and exhibits filed in trial court); V.R.A.P. 28 (providing that appellant may file appellant's brief and reply brief, and that no further briefs may be filed without Court permission).