*Boccia-Cole v. State*, No. 588-10-19 Wncv (Tomasi, J., Apr. 15, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 588-10-19 Wncv |

| | |
|---|---|
| Moira Boccia-Cole and Kaleb Vasseur,<br>  Plaintiffs<br><br>  v.<br><br>State of Vermont<br>  Defendant | |

### Opinion and Order on the State's Motion to Dismiss

Plaintiffs Moira Boccia-Cole and Kaleb Vasseur are grade school children residing in Moretown and Fayston, respectively, both of which are part of the Harwood Unified Union School District (HUUSD). Within the HUUSD, the number of members and effective voting power of the members of the HUUSD board are allocated to the member towns in a proportional manner according to a system based on relative population size. Because Moretown and Fayston have small populations in relation to some other member towns, Plaintiffs maintain that the school directors from Moretown and Fayston, in combination with other directors from their own town, on the HUUSD board are able to exert proportionally less influence overall than school directors from larger member towns. Plaintiffs allege that this system means that they suffer less "governance educational opportunity" than other students, which, they claim, violates Vermont's Common Benefits Clause, Vt. Const. ch. I, art. 7, Proportional Contribution Clause, Vt. Const. ch. I,

art. 9, and Public Education Clause, Vt. Const. ch. II, art. 68.[1] Plaintiffs attribute this perceived discrimination to legislation known as "Act 46," 2015, No. 46, and ask the Court, among other things, to dissolve all unified school boards statewide that they believe suffer this discrimination and to compel the State, the sole defendant in this case, to never again impose on anyone "this scheme of inequitable school governance."[2] Amended Complaint 13 (filed Nov. 12, 2019).

The State has filed a motion to dismiss.[3] It argues, pursuant to Rule 12(b)(1), that Plaintiffs lack constitutional standing to assert their claims insofar as they do not allege that they have suffered any cognizable injury properly attributable to conduct of the State, and they are attempting to raise the rights of others insofar as their claimed relief extends to school districts other than their own. The State also asserts that Plaintiffs have failed to allege any of their purported constitutional violations sufficiently to state a claim. Vt. R. Civ. P. 12(b)(6).

---

[1] Plaintiffs appear to intend "governance educational opportunity" to be some measure of each student's representation by local school directors on the union school board that includes school directors from different towns.

[2] Act 46 is almost entirely uncodified and thus cannot effectively be cited by reference to Vermont statutes.

[3] With Plaintiffs' opposition to the State's motion to dismiss, Plaintiffs sought an additional enlargement of time. On January 15, 2020, the Court had extended the time for Plaintiff's opposition filing and requested an explanation for their failure to file one on time. Plaintiffs' opposition then was filed outside that extended time for opposition but with an explanation for the original tardiness. Presumably because that filing itself was late, Plaintiffs sought an additional retroactive extension. The State, however, did not object to the timing of this filing, and there is no prejudice. The Court considers Plaintiffs' January 31 opposition filing timely and its request in that filing for an additional extension moot.

I. Standing

"Standing doctrine is fundamentally rooted in respect for the separation of powers of the independent branches of government." *Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 340-41 (1997) ("[o]ne of the 'passive virtues' of the standing doctrine is to promote judicial restraint by limiting the occasions for judicial intervention into the political process"). Standing "confin[es] the judiciary to the adjudication of actual disputes and prevent[s] the judiciary from presiding over broad-based policy questions that are properly resolved in the legislative arena." *Parker v. Town of Milton*, 169 Vt. 74, 77 (1998).

The contemporary federal doctrine of standing was described in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), as follows:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id*. at 560–61 (citations omitted). These are the constitutional (as opposed to prudential) limits on federal courts' jurisdiction. These federal standing requirements have been adopted in Vermont. *Parker*, 169 Vt. at 77–78 (explaining that, in *Hinesburg Sand & Gravel*, the Vermont Supreme Court adopted the standing test articulated in *Lujan*). "A plaintiff must allege facts sufficient to

establish his or her standing '[o]n the face of the complaint.'" *Paige v. State*, 2018 VT 136, ¶ 10, 205 A.3d 526, 530–31 (citation omitted).

The State argues that Plaintiffs have failed to assert an injury for standing purposes because they accept that they have the same proportional representation on the HUUSB board as everyone else, on a *per capita* basis anyway, and they otherwise do not allege any palpable connection between the claimed deprivation of so-called *governance educational opportunity* and their own personal *educational opportunity*. *See Brigham v. State*, 166 Vt. 246, 265 (1997) ("gross inequities in educational opportunities" unconstitutional).[4] This argument may well have merit, but it is unnecessary to resolve at this time. *See Turner v. Shumlin*, 2017 VT 2, ¶ 11, 204 Vt. 78, 88 (no standing where claim is "too abstract"). Plaintiffs do not claim any deprivation of educational opportunity. They claim a heretofore unknown right to what they call governance educational opportunity, and they assert that their right to it is diminished because they live in small towns. The Court will assume, for the sake of the argument only, that this is a sufficiently alleged injury for standing purposes.

---

[4] Plaintiffs' assertion in the amended complaint and in briefing to the effect that the "disparate treatment" they perceive in "governance educational opportunity" presents the "precise injury that the *Brigham* Court declared violative of the Vermont Constitution" is puzzling at best. Plaintiffs' Memorandum in Opposition 4 (filed Jan. 31, 2020). The *Brigham* decision is predicated on "gross inequities in educational opportunities evident from the record" of that case. *Brigham*, 166 Vt. at 265. The *Brigham* Court nowhere purported to address the abstract representational rights of students, much less any unrelated to actual educational opportunities.

4

Causation is the more flagrant defect in this case. "A plaintiff who shows no particular injury *that is attributable to the defendant* has no standing to bring a suit." *Baird v. City of Burlington*, 2016 VT 6, ¶ 13, 201 Vt. 112, 119 (emphasis added). It has been noted that, while the causation prong of standing sometimes is "misused as an excuse to avoid decision," among its "best uses" is when the plaintiffs have simply sued the "wrong defendants." 13A Richard D. Freera and Edward H. Cooper, *Fed. Prac. & Proc. Juris*. § 3531.5 (3d ed.). Such is the case here.

Plaintiffs attribute their claimed deprivation of governance educational opportunity, with virtually no explanation, to Act 46 and, *ipse dixit*, to the State, the defendant in this case. They do not allege that Act 46 required the model of board representation used by HUUSD (or any other) or, regardless, that the State in any cogent way forced that or any other model of board representation on HUUSD.

The Vermont Supreme Court recently described Act 46 as follows:

> In 2015, the Vermont Legislature enacted Act 46 to address a statewide trend of declining student enrollment and increased education costs. 2015, No. 46, § 1. The law was intended "to move the State toward sustainable models of educational governance" by encouraging local action to "maximize operational efficiencies through increased flexibility to manage, share, and transfer resources, with a goal of increasing the district-level ratio of students to full-time equivalent staff." To achieve this goal, Act 46 established a multi-year process for merging existing school districts into newly created districts with preferred governance structures. The law contained financial incentives for districts to voluntarily merge. The law directed the State Board of Education to order districts that had not acted by November 2018 to merge or realign where necessary.

*Paige v. State*, 2018 VT 136, ¶ 2, 205 A.3d 526, 529 (citations omitted). Act 46 addresses the composition and structure of school districts. It does not address the proportional voting models employed by union school district boards.

The matter of what voting model a union school district board may employ is left up to the union school district and the voting constituents of its member towns. *See* 16 V.S.A. §§ 706e, 706f. Act 46 does not reallocate authority to determine that issue to the State, and there is no allegation or other indication in the record generally that the State in some way exerts any such authority. Plaintiffs also do not dispute the State's assertion that HUUSD's member towns voluntarily (without being compelled by the State) assembled into the HUUSD and selected their own form of proportional voting for HUUSD board purposes.

To the extent that Plaintiffs may claim that the mere inducement in Act 46 to form union school districts somehow renders the State responsible for proportional voting model selected by the voters of the HUUSD, any such "causation" is far too attenuated to support standing in this case. "Plaintiffs must be directly affected by a government action, rule or law in order to have standing to challenge it." *Brod v. Agency of Natural Resources*, 2007 VT 87, ¶ 13, 182 Vt. 234, 240; *see also* 13A Richard D. Freera and Edward H. Coopera, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed.) ("If the injury is caused by matters other than the acts complained of, the injury does not support standing, either as a guaranty of vigorous advocacy or as a justification for crossing the lines that separate the judicial power from the other branches of government.").

6

Without any cogent allegation that the State has caused the injury Plaintiffs complain of, there is no standing. Because Plaintiffs lack standing on this ground, and this case thus must be dismissed, there is no need to determine the State's other arguments in favor of dismissal.

II.     Conclusion

For the foregoing reasons, the State's motion to dismiss is granted.

Electronically signed on April 3, 2020, at 3:15 PM pursuant to V.R.E.F. 7(d).

_____
Timothy B. Tomasi
Superior Court Judge