Vermont Superior Court
Filed 04/08/21
Washington Unit

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 20-1-21 Wncv

---

**Grayck vs. Scott et al**

---

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss  (Motion: 2)
Filer:        Sarah E. B. London
Filed Date:   February 02, 2021

The motion is GRANTED.

In this case, Plaintiff David Grayck, a lawyer, asks the court to enjoin, or grant a writ of mandamus enjoining, Governor Philip Scott's Executive Order (EO) 02-21, which would reorganize the Natural Resources Board and District Commissions and restructure decision-making under Act 250, 10 V.S.A. §§ 6001–6111, Vermont's state land use law, as of July 1, 2021.  Mr. Grayck evidently believes that EO 02-21 is an unwarranted and illegal order, and he seeks to challenge it by attacking the process by which it might be implemented.  Mr. Grayck is represented by James Dumont, Esq.  The State of Vermont, the sole defendant in this case, is represented by Chief Assistant Attorney General Sarah London.[1]  The State has filed a motion to dismiss arguing that the court lacks subject matter jurisdiction over this dispute because Mr. Grayck lacks constitutional standing to pursue it and, even if there could be any justiciable controversy advanced by Mr. Grayck, it is not yet ripe for the court's review.

Vermont law creates a process by which the governor may reorganize the Executive Branch by use of EOs as follows, in relevant part:

---

[1] Nominally, Mr. Grayck sued both Governor Scott and the State.  However, he sued Governor Scott in his official capacity alone, which is no different than simply suing the State.  See *Lewis v. Clarke*, 137 S.Ct. 1285, 1290–91 (2017); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official."); *Karcher v. May*, 484 U.S. 72, 78 (1987) ("We have repeatedly recognized that the real party in interest in an official-capacity suit is the entity represented and not the individual officeholder."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted)).

(a) The Governor may propose by Executive Order changes in the organization of the Executive Branch of government which are not consistent with or will supersede existing organization provided for by law. *The Executive Order shall be submitted to both houses of the General Assembly.*

(b) An Executive Order issued under this chapter shall be presented to the General Assembly not later than January 15th of the year in which the General Assembly sits. *The Executive Order shall become effective unless disapproved by resolution of either House of the General Assembly* within 90 days, or before final adjournment of that annual session, whichever comes first.

3 V.S.A. § 2002 (emphasis added).

EO 02-21 was issued January 14, 2021, and it was then submitted to both houses of the General Assembly. On January 15, the EO was referred for consideration to the House Natural Resources, Fish and Wildlife Committee and Senate Natural Resources and Energy Committee. Before either committee had taken any decisive action, Mr. Grayck filed this action on January 20. On January 29, the Senate committee unanimously disapproved of the EO by resolution. When the State's motion to dismiss was filed on February 2, the disapproval resolution was pending on the Senate Floor. The full Senate adopted it on February 5. The House has not taken action on the EO.

The reorganization statute clearly states: "The Executive Order shall become effective unless disapproved by resolution of *either* House of the General Assembly within 90 days, or before final adjournment of that annual session, whichever comes first." 3 V.S.A. § 2002(b). EO 02-21 nevertheless states: "This Executive Order shall take effect on April 15, 2021, unless disapproved by *both* houses of the General Assembly." EO 02-21(emphasis added).[2] The State has taken no position on what § 2002(b) requires in this litigation thus far.

Mr. Grayck claims an interest in EO 02-21 arising out of his professional occupation as a Vermont lawyer whose practice is concentrated in environmental and land use law. He represents clients seeking or opposing permits under Act 250. This involves appearing before District Commissions, citizen tribunals that, among other things, determine whether an application will go down a "minor" route or a "major" (public hearing required) route. District Commission procedures are generally informal compared to the process that Mr. Grayck believes EO 02-21 would impose. Mr. Grayck alleges that if EO 02-21 becomes law, his current and future clients who either need Act 250 permits or oppose

---

[2] April 15 marks the date that the EO would become effective. July 1 is when the changes ordered by EO 02-21 would occur.

Entry Regarding Motion 20-1-21 Wncv Grayck vs. Scott et al

Page **2** of **5**

them will be less likely to seek or oppose them.  This will reduce his income.  He also claims that he will charge clients higher fees, which will further discourage them.  He asserts that any such changes will introduce legal uncertainty and further dampen demand for permits.  Finally, he claims to enjoy the status quo and presumably would not enjoy the process contemplated by EO 02-21 as much.

Standing requires that a plaintiff in a suit against the government "must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." *Parker v. Town of Milton*, 169 Vt. 74, 77 (1998).  "The standing doctrine protects the separation of powers between the branches of government by ensuring that courts confine themselves to deciding actual disputes and avoid intervening in broader policy decisions that are reserved for" the other branches. *Paige v. State*, 2018 VT 136, ¶ 8, 209 Vt. 379.  "Ripeness is part of justiciability and is built on the premise 'that courts should not render decisions absent a genuine need to resolve a real dispute.'  Claims are ripe when there is a 'sufficiently concrete case or controversy' and when the exercise of judicial power is justified by 'prudential considerations.'" *State v. M.W.*, 2012 VT 66, ¶ 11, 192 Vt. 198 (citations omitted).  "Standing . . . focuses directly on the question whether a particular interest or injury is adequate to invoke the protection of judicial decision.  Ripeness and mootness easily could be seen as the time dimensions of standing."  13B Wright & Miller et al., Federal Practice & Procedure.: Juris. 3d § 3531.12; see also *id*. ("Mootness blends into standing—standing at the beginning of an action does not escape mootness arising later.").

Mr. Grayck filed this action within days of the issuance of EO 02-21, when he could not possibly have known how the process under 3 V.S.A. § 2002 would unfold.  As it happens, § 2002(b) appears, on its face anyway, to permit *either* house of the General Assembly to disapprove of such an EO and thereby kill it, and the Senate promptly did exactly that.  Despite these circumstances, in his opposition to dismissal, Mr. Grayck nevertheless asserts:

> The Governor, however, has chosen to . . . press onwards based on his view, set forth in the Executive Order and affirmed by his counsel in legislative testimony, that the Executive Order remains in effect unless *both* houses veto it. . . .

> This extraordinary state of affairs will not change one iota between now and April 15.  Both sides have drawn their lines in the sand.

> . . .

> The Governor's position, set forth explicitly in the Executive Order and affirmed by his counsel in the same legislative testimony cited in the Motion to Dismiss, is that

the Executive Order remains in effect unless *both* houses veto it, despite the statute. The Governor's continued defense of the Executive Order in this Superior Court proceeding, despite the Senate veto, confirms that this is his position.

.   .   .

The Governor is not still "considering" whether or not to take the anticipated action.

.   .   .

The Governor still intends to implement the Order.

Mr. Grayck's Opposition to Dismissal at 1, 9, 10, 13. Any such statements as to the Governor's intentions by his counsel preceded the Senate's veto, as did the EO itself (obviously). Otherwise, Mr. Grayck has not explained how he may be privy to the Governor's private thoughts and intentions, and Governor Scott is *not* a party to this case. The only defendant is the State of Vermont, and it is represented by the Office of the Attorney General.

Whether the Governor may attempt to implement EO 02-21 despite the Senate's disapproval, and assuming the House continues to not act, is purely speculative. What, if anything, the General Assembly might do in response is also purely speculative. Depending on how those unknowns unfold, whether the circumstances could mature into an injury sufficient to show that Mr. Grayck has standing to bring some claim based on EO 02-21 is necessarily purely speculative at this point. And if they could, any such claims would not be ripe now when none of that has yet happened. Mr. Grayck's fears about his future income and enjoyment are insufficient, at least at this time, to conclude he has standing to support intervention by the judiciary in a dispute that may—or may not—be unfolding between the other two branches of government.

The State is entitled to dismissal on standing and ripeness grounds.

Order

For the foregoing reasons, the State's motion to dismiss is granted.  The State shall submit a form of judgment.  V.R.C.P. 58(d).



Robert R. Bent,
Judge